## WILEY BRUTON v. THE STATE.

Under Article 518, Sec. 3, of the Code of Criminal Procedure, which requires that on a first application for a continuance the defendant must state "the facts which are expected to be proved by the witness; and it must appear to the Court that they are material," a defendant will not be permitted to select a fact abstractly indifferent, in regard to which he finds the witnesses mistaken, and base an application for a continuance upon a necessity to disprove such fact, without stating facts sufficient to show that it is material for him to disprove it.

Where the testimony of an accomplice is corroborated in numerous important and material facts, the admission by the Court of corroborating evidence in an immaterial part will not vitiate the verdict of the jury found upon the whole of the evidence.

In a case where corroborating evidence is required, it is always permissible to strengthen a witness's testimony by connected incidents showing its consistency and reasonableness.

Appeal from Harris. Tried below before Hon. P. W. Gray. The appellant was indicted for the theft of a slave.

Upon the calling of the cause, the accused filed an affidavit for a continuance, in the following words:

" And now comes the defendant, Wiley P. Bruton, and says that he cannot go safely to trial in the above stated case for the want of the testimony of Christopher Foley and William G. Higgins, who reside in the county of Shelby and State of Texas. This affiant was indicted at this Term of the Court, and as soon after the finding of the indictment and service of a copy of the same upon affiant as he could see one of his attorneys, he informed him of the materiality of the testimony of said witnesses, and his attorneys thereupon immediately took the necessary steps to have the said witnesses present to testify in this case, by having an attachment issued to the

county of Shelby to bring the said witnesses before this Court to testify in this case; and this affiant says, that if there is any apparent want of diligence in this case, it was caused by the fact that he has been confined in prison and his counsel have been attending upon Court. This affiant says, that he can prove by the said witnesses, that he was in the State of Texas, several hundred miles from the city of New Orleans at the time when this affiant is said to have sold the negro said to have been stolen, said sale being charged to have been made in the city of New Orleans.

It is charged that this affiant stole and run off from the State of Texas a negro and sold him in the city of New Orleans, on or about the 25th July, 1857. Now this affiant can prove by the said witnesses, that at that time he was in the State of Texas, several hundred miles from the city of New Orleans, and that he could not have been in said city at the time alleged. Said witnesses are not absent by the procurement," &c.

Motion for continuance overruled.

Dickson, a witness on the part of the State, testified that he had known the accused for six years; that he also knew the negro boy Frank charged to have been stolen by him; that on the 8th August last he had seen the boy in New Orleans; that sometime in June last Bruton told him that the boy Frank that formerly belonged to John Kuykendall was runaway and was staying about Robert Kuykendall's place in this county, and that he wanted to fix to take him off and sell him. That something like a month afterwards Bruton took a bill of sale from his trunk at Kuykendall's house, and Kuykendall instructed the witness and Bruton to go to Richmond and have it proven up, and gave the witness ten dollars; that on the morning of 4th July last, witness and Bruton went to Richmond and went before a Notary Public, and the witness, under the name of John M. Haines, acknowledged the bill of sale and delivered it to Bruton, under the name of William Parker.

The bill of sale from Haines to Parker, proven before Wm. E. Kendall, a Notary Public, was identified and read in evidence. Witness also signed the bill of sale as a witness by the name of James Brown. That witness and Bruton returned from Richmond on the same day; that in a day or two after they returned from Richmond Bruton left, but did not see him take the boy Frank; that Bruton told him he was going to take the boy away and sell him, and that preparations for the purpose were made, such as providing a horse and a mule, getting clothes, saddle bags, &c.; that he knew the horse and mule provided for Bruton and the boy to leave on, and has never seen them since; that before he saw Bruton after his return he saw a mulatto girl at Mrs. McDow's, which Bruton told him he had brought back, and that he had swapped the boy Frank for her.

Kendall testified that he was a Notary Public in the town of Richmond, and that he recognized the witness Dickson and Bruton as the persons who appeared before him about the 1st July, one representing himself as John M. Haines and the other as William Parker. He also recognized the bill of sale and his seal and signature thereto.

Edward Francis, a son of Mrs. McDow, where witness Dickson lived, corroborated the statements of Dickson in reference to the preparations for Bruton to leave with the boy Frank, and as to the bringing back by Bruton of a mulatto girl.

Mrs. McDow, a witness, also corroborated in several particulars the evidence of Dickson.

Dickson took the mulatto girl through New Orleans, where it appears by his testimony he arrived about 8th August, and thence went to Shreveport, where he was arrested. Among other papers found upon his person was a letter of introduction from Taylor, Hadden & Co. to Z. H. Trudeau, dated August 8, 1857, which was offered in evidence to corroborate the statements of Dickson to the extent of showing that on that day he was in New Orleans, to which objection was made and overruled.

The defendant was then permitted to give in evidence the facts stated in his affidavit for continuance, not only that the witnesses would swear to the facts if present, but that they were absolutely true.

Verdict of guilty.   Motion for new trial overruled.

The appellant assigns the following errors :

1st. The Court erred in overruling defendant's motion for a continuance.

2d. The Court erred in permitting the State to corroborate the accomplice Dickson in statements not material to the issue in the case.

3d. The Court erred in receiving other evidence objected to by the accused.

4th. The Court erred in its charge to the jury.

5th. The verdict of the jury was contrary to the law and the evidence.

6th. The Court erred in overruling the motion for a new trial.


*R. K. Cage,* for appellant.   The Judge says, in his charge : " It did not appear to the Court that the matters to be proved by the witnesses were material to the issue presented by the indictment." The application for a continuance, among other things, states, substantially, that the witnesses would prove that the accused was in the State of Texas, several hundred miles from the city of New Orleans, upon a certain day and date, when defendant was said to have stolen the negro and to have sold him in New Orleans.

Now the indictment is for negro stealing.   Complicated with the statements afloat in the community, and perhaps from the lips of the witnesses who will be brought to sustain the indictment, is the charge that the accused committed the theft and sold the stolen or missing negro in the city of New Orleans, on or about the day mentioned in his affidavit.   The Judge,

upon a first application for a continuance, could only look to the probable connection of such testimony with the case. If it related to the case, and was material in that relation, he had no discretion but to continue the case. (7 Cowen, 368.)

Indictments should be, and generally are, summary and brief in the description of the offence charged. They do not go into detail or circumstance. Evidence is copious, and in this case almost wholly circumstantial. The accused took the only known method of bringing before the Court a knowledge of the materiality of the witnesses on account of whose absence he desired a postponement of the trial. He showed to the Court the probable tenor of the evidence that would be adduced against him. That testimony he alleged would be met and contradicted in some important particulars (which he set forth) by the absent witnesses. (Hyde v. The State, 16 Tex. R. 445.)

When a first application for a continuance appears upon its face to be sufficient, the Court cannot go into an investigation of the charge, and apply considerations deducible from the evidence to the question of continuance. The law has regulated the time when a motion of this kind shall be made, as well as its form and requisites, and these being complied with leave the Judge without discretion. (10 Tex. R. 283.)

But it may be said that the facts stated in the affidavit were placed before the jury as evidence in the case, and as absolutely true. If there was error in refusing the continuance, this did not cure that error. This evidence was not obtained by any method sanctioned by the law. The counsel for the accused placed no value upon it, and only accepted it at the suggestion of the Judge, under the belief that it would not prejudice the cause of his client. The course pursued in this case has no precedent. The question was not progressive, but had already been decided by the Court, and the counsel for the accused, in acquiescing in the suggestions of the Court, expressly re-

served the benefit of his exception taken to the ruling of the Court when the trial was first ordered to proceed.

In the case of Vermilyea v. The People, the Judge ordered a specification of what the absent witness would prove before the trial was allowed to proceed, and yet the Supreme Court of New York said that it was error to refuse a continuance, and that a new trial should be granted.

This Court, in the case of Hyde v. The State, said that an affidavit, introduced as evidence, was no substitute for the oral statements of the witnesses. The moral effect of having the witness to testify upon the stand can have no substitute. Testimony that has the appearance of having been manufactured by the accused is of the lowest possible value, and the security of the most important rights of the citizen requires that it should be discouraged. The enlightened system of judicial procedure, which has been sanctioned by unvarying approval for ages, should not yield to the novelties of rash experiment.

Another exception taken was in regard to corroborating the evidence of the accomplice Dickson. The uncorroborated evidence of an accomplice is not sufficient to convict a party charged with crime. However consistent and reasonable such evidence may appear, a jury must reject its conclusions, unless it is corroborated by other evidence coming from a purer source. (2 Stark. Ev. 12 ; 1 Green. Ev., Section 381, notes.) And that other evidence, sustaining the narrative of the accomplice, must be in regard to some fact or facts material to the issue, material in this case in showing the guilt of the accused. It is not sufficient that some of the statements of Dickson should be confirmed by other evidence. The law requires that those statements thus confirmed should be relevant to the issue, and should involve Bruton in the perpetration of the crime. (1 Green. Ev., Sec. 381, notes ; C. C. P., Sec. 653.)

In the progress of a trial witnesses will unavoidably make impertinent and immaterial statements. This had been done

by Dickson. The State proposed to corroborate those state-
ments. The counsel for the accused objected that it was inad-
missible to corroborate an accomplice in statements he has
made which are impertinent to the issue. Was the objection
well founded?

The Court is the judge of the admissibility of evidence,
and whether that which is proposed to be adduced is evidence
at all. The jury are the judges of the value or sufficiency of
that evidence which the Court has admitted. The question
raised at this point was : Shall the State be allowed to cor-
roborate an accomplice, by showing that he has told the truth
in regard to irrelevant and immaterial matters? The Court
decided that such matter was admissible, thereby confounding
and intermingling questions of law and questions of fact which
should have been disintegrated by the Judge.

The evidence of an accomplice must be corroborated. Im-
material statements are not evidence at all, in the judgment
of the law. Does it make them evidence to corroborate them?
This would be making the effort to corroborate an accomplice
a sort of legal alchimy, by which all impertinent matters would
be immediately converted into evidence and become relevant
to the issue.

In this case many irrelevant matters had been spoken of by
an accomplice in giving his testimony to the jury. Shall the
State be allowed to corroborate these statements, when such
corroboration is no sanction to the verity of the statements
of the accomplice that are material to the issue. The Judge
ignored the doctrine that he was the sole judge of what was
evidence, and of the admissibility of all testimony offered in
the case. The course he pursued would lead to wild license
on the part of witnesses. Some would be restrained only by
a regard for the truth—others by what they might suppose
would be favorable to the party for whom they appeared, and
others by their ideas of dramatic narrative and effect, just as
they might be honest, biassed, or vain and ambitious of dis-

play before the Court and jury.  The wholesome restraints of
the law that are exerted to confine the course of investigation
to the issue in the case, would be disregarded, and an unlimited
field of injury opened in every case.

*E. A. Palmer*, for the State.  The affidavit wholly failed to
show to the Court the materiality of the facts expected to be
proved by the witnesses.  It did not appear in any manner
from the indictment or any other portion of the record before
the Court, that the defendant was charged with having sold the
negro in New Orleans at any particular date.  Nor does it ap-
pear from any evidence given in the progress of the case.  The
charge of the indictment is that the defendant did steal the
slave from the possession of Charles Lewis, in the county of
Harris, on the 1st of August.  It was in no manner necessary
to show what was done with the negro in New Orleans by
Bruton.  All that was necessary was to show that he had sto-
len the property in the county of Harris.

Then we say that the affidavit did not sufficiently show the
materiality of the evidence to entitle it to any weight what-
ever.  So immaterial did the facts themselves appear, that the
counsel for the State then and there proposed to admit them
as absolutely true, and go to trial and show their immaterial-
ity.  But the Court held it the duty of the accused to show
the materiality affirmatively, and overruled the application.
(Code of Criminal Procedure, Art. 518.)

After the evidence for the State had been concluded the de-
fendant's counsel suggested to the Court that the materiality
of the evidence had become apparent, and that the defendant
was then entitled to a continuance, which the Court refused
to grant, but held that inasmuch as there had been evidence
tending to show that the accused might have been in New
Orleans about the time mentioned in the affidavit, with the
slave, the accused should be permitted, if he saw proper, to
give the facts stated in his affidavit in evidence to the jury,

to be taken as facts  positively and undeniably true, not  only
as facts which the witnesses would  state upon oath if person-
ally present, but that they were absolutely true.    (See Trans-
cript, p. 8 and 9, and 43.)

In the  case of  Hyde v. The State, this Court said :    "We
may suppose a case where a sufficient application for a contin-
ance on account of the absence of a material witness has been
improperly overruled.    Yet if it should turn out that during·
the progress of the trial the witness made his appearance and
the defendant obtains the  benefit of his testimony it cannot
be supposed that the Court, upon the motien for a new trial,.
would not be at liberty to look beyond this affidavit, or that
this Court, upon appeal, must shut our eyes to the fact that the·
defendant has had the benefit of the testimony of his witnesses
and can have sustained no injury by the refusal of his motion.
Surely in  such a case this  Court  would  not  be required to
reverse the judgment on that ground."

In this case, though the defendant's witnesses did not after-
wards come into Court and  testify, yet  he  obtained the  full
benefit of all that his affidavit showed  that they would tes-
tify.

By  examination of all the evidence in  this case it will be
seen that the facts stated  in  the affidavit are wholly immate-
rial to the cause, and  whether true or false, are entirely consis-
tent with his  guilt, as shown  by the evidence, and that no in-
justice has been done by refusing his motion  for continuance.·

The 2d and 3d assignments are as to the error of  the Court
in admitting corroborating evidence  to that of Dickson on
immaterial points.    Without dwelling upon this assignment, I
shall content myself with giving the English rule as laid down
in a note to Greenleaf, which says :    " The  English rule is
stated to be that the confirmation of an  accomplice ought to·
be in such and so many parts of the accomplice's narrative as
may reasonably satisfy the  jury that he is telling truth, with-
out restricting the confirmation to  any particular points, and

leaving the effect of such confirmation (which may vary in effect according to the nature and circumstances of the particular case,) to the consideration of the jury, aided in that consideration by the observations of the Judge. (1 Greenleaf's Ev. Sec. 381, note 1.)

As no exception was taken at the trial to the charge of the Court, and no steps taken to make it properly a part of the record, I doubt the right of the appellant to complain here of it, but as the same has been embraced in the record, I would most earnestly request an investigation of the charge in connection with the facts, as I am convinced that the Court will there find a full and complete answer to the remaining errors assigned.

ROBERTS, J. On a first application for a continuance the defendant must state "the facts which are expected to be proved by the witness; and it must appear to the Court that they are material." (Texas Code of Crim. Procedure, Art. 518, Sec. 3.)

The fact proposed to be established by these witnesses was, that the defendant was not in New Orleans on a particular day, about the 25th of July, 1857, but in the State of Texas, several hundred miles from New Orleans. It is sought to make this fact material by stating that he is charged with selling the negro in New Orleans about that time. He is not charged with that in the indictment. It must have been by some of the witnesses; if by any one, the charge was made. Suppose that he could show that the witness was mistaken about his being in New Orleans by ten or twenty days, that could not avail the defendant anything. The defendant should have stated facts sufficiently to show how it was material for him to disprove his being in New Orleans on that day. It will not do to permit a defendant to select a fact, abstractly indifferent, upon which he finds the witnesses under a misapprehen-

sion, and base an application for a continuance upon the necessity to disprove such fact. The Court below did not err in overruling the application for a continuance, and there was nothing developed on the trial to show that any wrong was done. Had such been the case, the reading of affidavit as evidence would not have cured the defect. We know of no principle upon which such a practice can be sanctioned in criminal cases.

The Code of Criminal Procedure (Art. 653) provides that " a conviction cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offence committed ; and the corroboration is not sufficient if it merely shows the commission of the offence."

The testimony of Dixon, the accomplice, was that Bruton, after making preparation several days, in co-operation with Kuykendall, started off with the negro Frank, alleged to be stolen, carried him to New Orleans, and there exchanged him for a mulatto girl, and brought her back home. A portion of this was testified to as an admission of Bruton to Dixon.

This was confirmed in several material points. Edward Francis testified, in confirmation of what Dixon said in relation to Bruton's preparing for the trip, that Bruton got a new pair of saddle-bags, and some clothes, and also a saddle repaired, and that Bruton and a certain mule and horse were missing, and that Bruton returned and brought with him a mulatto girl. Mrs. McDow testified that Bruton came to her house the evening he left, and told her that he was going to be absent three or four weeks. After that he was missing some time ; so also were the mule and horse missing, that Dixon said Bruton and the negro, Frank, rode off. After he returned the mulatto girl was at Kuykendall's. Kendall confirmed the statements of Dixon as to Bruton and himself having been at Richmond, and getting a fictitious bill of sale acknowledged before a Notary Public, preparatory to the trip.

The negro Frank is found by Lewis in New Orleans, where Dixon stated he saw him. Martin testified that in the summer of 1857 he met with Bruton in Galveston, who said he had come off the steamer, and had not been at Houston lately; they went up to Houston together, and Bruton then had along with him the mulatto girl.

Dixon went off afterwards with this girl to New Orleans, and thence to Shreveport, where he was arrested and brought back. He stated that it was on this trip that he saw the negro Frank in New Orleans. In confirmation of Dixon's being at New Orleans, and of the truth of his narration, a letter of introduction given to him by a house in New Orleans was offered in evidence, its authority being well established by proving the hand-writing. This letter was objected to by the defendant, because it was a corroboration of Dixon's testimony in an immaterial part; which objection was overruled, and this ruling of the Court is assigned as error. Our Code establishes the rule, in accordance with what is the practice of Courts generally, requiring the testimony of an accomplice to be corroborated in some matter connecting the defendant with the commission of the offence. (Code of C. P. Art. 653; 1 Greenleaf Ev. Sec. 831 and note; 1 Phillips Ev. 34.)

This must of course be in a material matter. And the Court so charged the jury in this case. The question here presented is, that where the testimony of an accomplice is corroborated in numerous important and material parts of his evidence, will the admission by the Court of a corroboration in an immaterial part vitiate the verdict found by the jury upon the whole of the evidence. No authority has been found establishing such a doctrine. Indeed it would often be almost impossible to permit a corroboration in a material part, without at the same time permitting it in an immaterial part.

A case might happen that an undue importance might be attached to a corroboration in immaterial matters, by which the jury would be misled. But there is no indication in the

Sherman v. The B. B., B. & C. R. R. Co.

record that such could have been the case here. We do not think that the admission of this testimony by the Court under the circumstances was error, though it had been deemed immaterial. Another view of this evidence may be presented. This witness proved, as an independent fact, that he saw the negro Frank in New Orleans. This was a material fact in the general proof of guilt. This letter is strong confirmatory evidence that Dixon was in New Orleans, where he could see the negro Frank at that time, who was afterwards found there by Lewis, when he carried back the girl and re-exchanged the negroes. It is always permissible to strengthen a witness' testimony by connected incidents showing its consistency and reasonableness.

Judgment affirmed.