JAMES ROBERTS v. THE STATE.

1. EVIDENCE OF ACCOMPLICE.—See testimony held insufficient as corroboration of testimony of an accomplice in connecting the accused with the offense.

2. ACCOMPLICE.—One jointly indicted with another is not necessarily an accomplice.

3. SAME.—A conviction cannot be had upon the unsupported testimony of two or more accomplices.

Appeal from Hunt.    Tried below before the Hon. W. H. Andrews.

James Roberts, Wm. Ledbetter, C. J. Ake, Branceford Marshall, and James Glass were indicted for theft of a gelding, the property of R. W. Lane.

Roberts was put upon trial at the January Term, 1875, when the district attorney entered *nolle prosequi* as to Ake and Ledbetter.

R. W. Lane, witness for the State, testified to his horse, branded R. L., being stolen on the night of the 7th of October, 1874.

Other witnesses testified to the pursuit of the parties, and that the horse branded R. L. was found in Cass county in the possession of one Cumby, who had bought him of C. J. Ake.

C. J. Ake, for the State, testified: I know defendant, James Roberts. Have known him about two years. I came to Hunt county on Monday, 5th of October, 1874, in company with James Glass, and stayed all night at Ledbetter's. I rode a speckled horse. I met Jim Roberts and Joe Parker on Tuesday, about ten o'clock, at Ledbetter's. They were riding, one a sorrel horse branded J. I. M. and J. H. and the other a sorrel branded S. K. or S. E. On Tuesday night I stayed at old man Roberts'. The next morning Jim Roberts, Jim Glass, Joe Parker, and myself went to Ledbetter's, and soon after to Jim Roberts', and then out on the prairie, and run a horse race. Joe Parker and Jim Roberts proposed trading the three horses for my speckled horse, and delivered me the horse branded J. I. M. They said the other two were at Jack Marshall's, and that they would go after them that night. We all three went to Ledbetter's. About three o'clock three men passed there. Soon after they passed Jim Roberts got on a horse and went after them. Brans Marshall came back with him. We had had supper. Brans Marshall ate afterwards. While there a man passed in a buggy who was said to be Lane. About sundown

Jim Roberts, Jim Glass, Joe Parker, and Brans Marshall left Ledbetter's and went in a northwest direction. Said they were going after the horses to Jack Marshall's. I remained at Ledbetter's. They came back to Ledbetter's about half-past eight or nine o'clock with four horses; one a large sorrel horse, branded R. L. on the left shoulder; had on buggy harness, no bridle and no buggy lines. One was a black horse and one a bay horse branded N. N. They delivered to me two of the horses, one being the sorrel branded R. L. and the other the bay. Joe Parker left then and went in the direction of King's ranche. Brans Marshall left. Jim Roberts, Jim Glass, and myself went by Jim Roberts' house, and Jim Glass and I started home that night, taking the horses branded J. I. M., R. L., and the black horse with us to Cass county. I traded the horse branded R. L. to a man named Cumby, near Cusseta, in Cass county. Took the harness to Mrs. Davis', in Cass county. Had one of the horses with me when arrested. I rode the horse branded R. L. to Greenville after my arrest.

Cross-examined, he said: I am 27 years of age. My name is C. J. Ake, sometimes called Jeff Ake; have lived in Arkansas, Indian Territory, New Mexico, Sonora, Arizona, California, and Texas. I now live at Texarkana. Have lived in Williamson county, Bowie, Denton, and several other counties in Texas. My home has been wherever I had my hat and boots on. My occupation has been hauling lumber, in the cattle trade, and overseeing before the war. Never dealt much in horses. There are some indictments pending against me in Williamson county, I think. Don't know how many. Have been in jail here about nine months.

*W. C. James* and *R. H. Taylor*, for appellant.

*A. J. Peeler, Assistant Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—A careful examination of the evidence as set forth in the statement of facts has satisfied

us that the testimony of Ake, who was undoubtedly an accomplice and who seems to have been so regarded on the trial and in the charge of the court, was not corroborated by other evidence tending to connect the defendant with the alleged offense.

The rule established by the code "is in accordance with what is the practice of courts generally," and forbids a conviction on the testimony of an accomplice, unless corroborated "by other evidence tending to connect the defendant with the offense committed," and this corroboration it has been held must be "in a material matter." (Bruton *v*. State, 21 Tex., 348.)

The evidence shows that the defendant was in company with Ake on the day and afternoon preceding the night of the theft, but this appears to be true of others who are not charged with the theft. Of itself this fact, whilst it might excite inquiry, does not under the circumstances seem to have any tendency to connect the defendant with the offense.

On the morning after the theft the horse which Ake had been riding was in the pasture of John Roberts, defendant's father. There is no evidence to connect defendant with the fact. The witness Ake speaks of going by Jim Roberts' house and of going to Jim Roberts, and the fair inference from this and other testimony is that Jim Roberts had a home of his own, and did not live with John Roberts. There is nothing to show that defendant had possession or charge of the horse which Ake had been riding.

Another witness introduced by the defense testified to meeting five or six men leading horses. Who they or any of them were does not appear, nor does it appear that the fact has any significance as to defendant.

We are unable to see that any material fact whatever, connecting or tending to connect defendant with the theft, has been established by any other testimony, and because

there was no such evidence to corroborate that of the accomplice, Ake, the court should have granted a new trial.

Wm. Ledbetter, another party jointly indicted, and as to whom a *nolle prosequi* had been entered, was also introduced as a witness, but his testimony does not appear to have been at all material as to defendant.

The evidence of Ledbetter, whatever tendency it may have as to those parties identified by him as coming back to his house on the night of the theft, has no tendency to connect the defendant with the offense. (See Coleman *v.* The State, *ante*, 109.)

The defendant's counsel asked a charge to the effect that one who had been jointly indicted was an accomplice, and refers to the case of Barrara *v.* State, 42 Tex., 260. In that case the record disclosed that a party, jointly indicted, had agreed to testify on behalf of the State, on the condition that the prosecution should be dismissed as to him, and that in pursuance of that agreement a *nolle prosequi* had been entered, and the party introduced as a witness. It was held that the testimony of such a witness should be regarded as that of an accomplice. But it is certainly possible that an indictment may be dismissed as to a party who is afterwards called on to testify, and who is yet not in fact an accomplice, and has not procured the dismissal by agreeing to testify. If, in fact, the public prosecutor has, in the interest of public justice, negotiated with the witness as an accomplice, it might well be expected that the fact should be made known.

It is scarcely necessary to say that so much of the charge asked as embodied the proposition that a conviction cannot be had on the uncorroborated testimony of two or more accomplices, is well-settled law. (Arch. Cr. Prac. and Pl., p. 154.)

Because the court erred in overruling the motion for new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.