## W. H. TWEEDLE, GEORGE TWEEDLE AND TOM MARTIN v. THE STATE.

### *No. 7368.    Decided June 10.*

1.  **Continuance — New Trial.** — Absent testimony which if procured would not tend to disprove the guilt of the defendant is immaterial, and the refusal of a continuance because of the absence of such testimony will not entitle the defendant to a new trial.

2.  **Same.** —Even though the absent testimony may be material and probably true, and although the defendant may have been prejudiced in his rights by having been compelled to try without it, yet on appeal a new trial will not be granted him unless it be reasonably probable that such absent testimony, had it been before the jury, would have produced a verdict more favorable to him.

3.  **Bill of Exception.** —A bill of exception to a ruling of the court permitting a question to be propounded to a witness must not only show that the question was answered by the witness, but must set forth the answer and state that the answer went before the jury as evidence.  The bill must be so full in its statements that in and of itself it will disclose all that is necessary to manifest the supposed error.

4.  **Argument of Counsel.** —To constitute remarks made by counsel in argument reversible error they must not only be improper but they must be of such a nature as would be clearly calculated to prejudice the rights of the defendant.  See the opinion for remarks of counsel in argument which did not constitute reversible error.

5.  **Evidence.** — Evidence held sufficient to sustain a conviction of murder in the second degree as to two of the defendants, but insufficient as to their co-defendant.

APPEAL from the District Court of Bell.    Tried below before Hon. W. A. Blackburn.

The defendants, W. H. Tweedle, George Tweedle, and Tom Martin, were jointly indicted and tried for the murder of A. B. Tyler.    The conviction was of murder in the second degree.    The punishment assessed against each of the Tweedles was thirty years confinement in the penitentiary, and against Martin twenty-five years confinement in the penitentiary.

The evidence is voluminous and only the substance of the material portions of it will be stated:

A. B. Tyler was killed at his own house, in Bell County, on Sunday evening, August 17, 1890.    He was killed by the defendant George Tweedle, with a pistol.    George Tweedle is the son of the defendant W. H. Tweedle, and was 16 years old at the time of the homicide.

Defendant Tom Martin is a negro boy about 17 years of age, who at the time of the homicide and for several years prior thereto lived with the Tweedle family. Mrs. Susan Tyler, the widow of the deceased, and the three defendants are the only eye-witnesses of the tragedy, and they each testified on the trial. Mrs. Tyler testified that deceased was sitting in a chair on the outside of his house, with their 2-year-old child in his lap; that George Tweedle and Tom Martin came to the yard gate, which was distant from the house about thirty feet, and George said to deceased, "How do you do, Mr. Tyler?" Mr. Tyler said, "How do you do, George; won't you come in?" George replied, "I don't believe I care about it." He then said, "Mr. Tyler, you have been talking about me and my mother." Mr. Tyler replied, "I have not talked about you or your mother either; you can ask the neighbors if I have." Witness, who was also outside the house, then started to the door of the house, when she saw W. H. Tweedle getting over the yard fence with a shotgun. She told deceased that W. H. Tweedle was approaching with a shot gun, when W. H. Tweedle said to her, "Yes, G—d damn you, I am going to fix you, too," and as witness stepped one foot into the door of the house W. H. Tweedle shot her, wounding her hand, wrist, and finger, and also wounding her baby, which she had in her arms, in its hip and leg. She got inside the house, when he fired again, one shot striking her in the leg. When deceased was told by the witness that W. H. Tweedle was approaching with a shotgun he (deceased) got up and ran toward the north end of the house. The door of the house was at the south end of the house, the house being a small one with but one door. Deceased ran around the house and was approaching the door and within three or four feet of it when George Tweedle fired upon him from the gate with a pistol. Deceased fell at the shot, but got up, struggled into the house and fell on the bed, saying to witness, "They have killed me; do the best you can." He died instantly after speaking those words. This witness testified that W. H. Tweedle shot twice with the shotgun and that George Tweedle shot only once with the pistol. Each of the defendants testified that W. H. Tweedle shot but once, but that George shot twice. The evidence is conclusive that it was a ball from George's pistol that killed deceased, and that there were no shot wounds upon him. The wounds upon Mrs. Tyler and her baby were made with small shot. After W. H. Tweedle had gone out at the gate he asked witness if Mr. Tyler was dead. She told him he was, and he then said, "You are the very G—d damned —— that caused it." Defendant Tom Martin then popped his fists together and cursed witness, and said that he could whip her and all her G—d damned friends; and that she was a G—d damned liar and that her oath would not be taken. He had not said or done anything before deceased was killed. Defendants then went off together toward their home, which was distant

about one mile. Witness then took her two children and went about one half a mile to Mr. Sivil's house and informed Mr. Sivil of what had happened, and returned to her home, where she remained with her children and dead husband until 12 o'clock that night, at which time Mr. Sivil with an officer reached there.

She testified further that on the Thursday before the homicide W. H. Tweedle came inside their yard, close to the door of the house, armed with a gun which he drew on her and, cursing her, said he was going to kill her. She got a pistol and went out of the house toward him and he left. Her husband was not then at home. She told her husband about it when he came from his work that day. Prior to this time the two families were friendly.

W. A. Sivil corroborated Mrs. Tyler as to her going to his house and informing him of the killing, and as to the wounds upon herself and baby, and as to her returning home and remaining there until he reached there with an officer.

Several witnesses described in detail the wound on deceased, the shot holes on the outside of the house, etc. All the witnesses agreed that the wound upon deceased was made by a 44 or 45 caliber ball, which entered the right side, passed through the body to the left side, where it lodged and was cut out on the next morning. Another large ball had struck the wall of the house on the inside. There were several small shot holes in the outside wall of the house about the door, and some on the inside of the house. All the small shot apparently had been fired from the place where Mrs. Tyler stated W. H. Tweedle was when he shot her and her baby.

Defendants, testifying in their own behalf, each contradicted Mrs. Tyler's statements in regard to the conduct and language of the defendant Martin, and stated that Martin did nothing and said nothing on the occasion of the killing, and knew nothing whatever of any difficulty between the parties until it occurred. W. H. Tweedle positively denied that he assaulted Mrs. Tyler with a gun on the Thursday before the killing.

In other particulars than those noted there is no material variance between the testimony of Mrs. Tyler and that of the defendants.

W. H. Tweedle testified that he did not intend to shoot Mrs. Tyler and her baby; that he was attempting to shoot the deceased, but his gun fired prematurely and accidentally and the shot struck Mrs. Tyler and her baby.

The defendants each testified that the meeting with deceased was unintentional; that they had left home to follow a wild animal which their dog was chasing, and were returning, their way being by deceased's house, when the altercation began between deceased and defendant George, as detailed by Mrs. Tyler.

It was proved by the defense that on the Thursday before the killing deceased went to the house of W. H. Tweedle, no person being there except said Tweedle's wife and baby, and going into the house where she was, seized her, hugged and kissed her, and attempted to throw her on the bed.   She struggled loose from him and told him she would tell her husband.   On the next day she was in company with her daughter and another young lady and her son Henry, returning home from a visit to Mr. Sivil's, and when near deceased's house he came out to where they were and abused her and her daughter, calling them whores and using other vile language toward them.   He was armed with a pistol, which he pointed at her son Henry, threatening to kill him.

Defendant W. H. Tweedle was informed by his wife and daughter of the conduct and language of deceased above stated on the Friday before the killing, and George Tweedle was informed of it by his sister on Sunday morning, the day of the killing.   Defendants had not met the deceased after receiving this information prior to the killing.

One witness testified for the State that on the evening of and before the killing he heard the defendant George Tweedle say that Tyler had been talking about him (Tweedle), and he was going to get even with him if he did not take it back.

Defendants proved by several witnesses that the deceased's general reputation for using loose, vulgar, and slanderous remarks about ladies was bad; that he was regarded by some people as being a crank.   They also proved that their general reputation for peace and quiet was good.

On the night after the killing the defendants W. H. and George Tweedle went to Belton, the county site, and surrendered to the sheriff, informing him of the killing but made false statements of the facts about it.   They then stated and claimed that they killed the deceased in self-defense; that he attacked them in the road, armed with a pistol, followed them some distance, and was attempting to shoot them when they shot him.   In their testimony defendants admitted they had made such false statements to the sheriff and others when they surrendered themselves.

The foregoing, in addition to the facts stated in the opinion, presents the case substantially.

*McMahon & McMahon,* and *James Boyd,* for appellants.

*R. H. Harrison,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—A continuance by appellants was sought for the testimony of Mrs. Sivil, which was overruled.   One of the grounds of the motion for a new trial was based on this action of the court.   By her it was expected to be shown "that there were only three shots fired and that the first shot she took to be a shotgun, from the sound, as it

was a different sound from the other two, and that Mrs. Tyler came to witness' house in a few minutes after she heard the three shots and told her that the Tweedles had killed her husband." It was not only proved to be so but was an admitted fact that the first shot fired was fired from a shotgun. It was a fact proved by all the eye-witnesses, including the defendants, who testified that Tyler was killed by George Tweedle with a pistol, and that Mrs. Tyler and her baby were shot by W. H. Tweedle with a shotgun. There was but one witness who testified that the shotgun was fired twice. All the other witnesses contradicted this, and show that the shotgun was fired but one time and the pistol twice. The deceased was shot twice with a pistol. Mrs. Tyler testified that W. H. Tweedle shot twice with the shotgun. Suppose she was mistaken, or testified falsely as to the number of shots fired from the shotgun, would that be material, or would it be material that in the opinion of Mrs. Sivil only one shot was fired from the shotgun? If so, it was abundantly proved as a fact without resort to opinion on the subject. Whether W. H. Tweedle fired the shotgun once or twice could not affect the result of the case. The fact still remained that the deceased was shot to death by pistol shots fired by George Tweedle. The Tweedles both testified that they were present and did the shooting, one with a pistol and the other with a shotgun. "The rule is well settled that testimony which, if procured, would not tend to disprove the guilt of the accused is of too immaterial a nature to entitle him to a new trial based upon an application for a continuance to obtain it." Browning v. The State, 26 Texas Ct. App., 432; Burton v. The State, 21 Texas, 337; Hildreth v. The State, 19 Texas Ct. App., 195; Fernandez v. The State, 4 Texas Ct. App., 419; Chaplin v. The State, 7 Texas Ct. App., 87; Frye v. The State, 7 Texas Ct. App., 94. "It is not in every case, however, where the absent testimony is material and probably true that this court will revise the ruling of the trial judge." Covey v. The State, 23 Texas Ct. App., 388. "It is only in a case where, from the evidence adduced upon the trial, we would be impressed with the conviction not merely that the defendant might have been prejudiced in his right by such ruling, but that it was reasonably probable that, if the absent testimony had been before the jury, a verdict more favorable to the defendant would have resulted." Covey v. The State, 23 Texas Ct. App., 388.

The evidence adduced on the trial, especially the uncontradicted inculpatory facts proved, will demonstrate that the facts expected to be proved by the absent witness are wholly immaterial in this case, and if true would not in the least tend to disprove the guilt of the parties or cast a shadow of doubt in that direction.

The third bill of exceptions is thus stated in the record: "The court erred in compelling Mrs. Tweedle, the wife of one of the defendants, and mother of one of the other defendants, to answer, over objection,

if her husband W. H. Tweedle had not whipped her and had to leave the country for it some years ago." This is the entire bill of exceptions, and it will be observed that it fails to state or give the answer of the witness. The bill of exceptions must not only show that the witness answered the propounded question, but it must also state the answer, and the further fact that that answer was admitted in evidence. The bill must be so full in its statements that in and of itself it will disclose all that is necessary to manifest the supposed error. Willson's Crim. Stats., secs. 2368, 2516.

During the opening argument the district attorney said "that a man could breathe slander and circulate slanderous reports against a woman, but he was not half as bad as the man that whipped his wife." The appellants' counsel objected to this language. Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause. The remarks must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the rights of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true. House v. The State, 19 Texas Ct. App., 227; Bass v. The State, 16 Texas Ct. App., 62. During the further progress of the argument the prosecuting attorney asked this question: "Why did not these defendants at the examining trial offer the same evidence in extenuation as they do now?" This remark is complained of also. The record shows that all of the witnesses, or nearly all, who testified for the defendants on their final trial also attended the examining trial, but none of them testified. The State developed the same state of case on both trials. Defendants Tweedle had on the night and day subsequent to the killing made statements of the manner and cause of the killing directly antagonistic to the evidence offered on their final trial. To the sheriff their statements were that the deceased came upon them armed and tried to kill them, while upon their final trial they testified that they killed the deceased because he had used insulting language concerning Mrs. Tweedle, and had been guilty of other insulting conduct toward her. Now on the examining trial none of these facts were proved nor offered in evidence. The State proved all these matters fully. The remark of the district attorney was a legitimate criticism upon the failure of the defendants to offer in evidence at the examining trial the conduct of the deceased toward Mrs. Tweedle, which was the principal defense on the final trial.

We have given this case a careful examination, and we find no error for which it should be reversed in so far as it relates to W. H. Tweedle and George Tweedle. After a full investigation of the facts bearing

upon the connection of the little negro boy Martin with the killing, we do not believe that the facts show him to be a guilty participant in the tragedy.   He evidently was not aware that anybody was to be killed; had followed the Tweedles to the scene of the killing for a different purpose and on a different mission, as we think the facts fully prove.   As presented to us the facts do not justify the verdict against Tom Martin. It is therefore the opinion of the court that the judgment as to Tom Martin be reversed and the cause remanded for another trial, and as to W. H. Tweedle and George Tweedle the judgment should be in all things affirmed, and it is so ordered.

*Affirmed.*

Judges all present and concurring.