## B. Russell v. The State.

No. 14518. Delivered December 9, 1931.

The opinion states the case.

*Phillips & Bell,* of Trinity, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, Judge.—Appellant was found guilty of the murder of one Luther Evans; his punishment was assessed at 15 years in the penitentiary.

The deceased had rented and was living on a place owned by a Mr. Smith, and it appeared that some misunderstanding had arisen as to the right of appellant to cut timbers from said land for the purpose of making ties; while there had not been any personal difficulty or altercation between the deceased and appellant, it appears from the record that the deceased had stopped some of the persons working for the appellant from cutting timber on said land that he had rented.

From the testimony of one Will Rice Barclay, introduced by the state, it appears that Mr. Smith, the owner of the land, had left a letter at his father's house for the deceased, Luther Evans, and had requested them to deliver the letter to the deceased; that on the morning of the difficulty, he and his father went to the place where the deceased was living and delivered the letter from Mr. Smith to the deceased. That when they delivered the letter to the deceased, he asked the witness to read it, which he did; that at the time he read the letter, besides he and his father, there was present a man named Riesenhofer and Aud Parish, who also lived on the Smith place. The deceased asked them if they would take him up to where appellant was on said premises so as he could deliver the letter to him; that when they got to the field gate near which the appellant was making ties, they all walked up to where the appellant was. The deceased walked up and spoke to the appellant and told him that he had run some of his men off early in the morning, who had been there making ties; that he had come down to tell the appellant that it was all right to go ahead and make ties, and reached in his pocket to get the letter that he had received from the owner of the premises and started to hand it to the appellant. The appellant stated, "Don't come any closer, don't hand me anything, I don't want it. You have been interfering with my boys down here and I am tired of it and don't hand me anything." The deceased then said, "I just want to give you this letter I just got and I didn't know it was all right for you to make the ties." That the appellant then began cursing and said he didn't want it and told them all to get off the premises. It then appears that Aud Parish faced the appellant and said, "God damn you, you can't scare me," and that when he said that, the appellant already had his hand under the bib of his overalls and when Parish told him that, the appellant shot. That he thought the first shot hit Aud Parish in the face, but he had ducked and it hit his hat and that the said Parish had his hands up to his face as if to prevent him from shooting him in the face. To the best of his knowledge, he shot three times, one of which shots was fired at his left and he looked back and the deceased had run into a ditch and just as the fourth shot was fired, the deceased was sliding off into the ditch. He testified that nobody but the appellant fired any shots out there that day; that somebody commenced hollering "Will," and his father said, "Luther is calling you." That he then ran to the ditch that Luther had crawled into and when he got to the ditch, the deceased was lying flat on his back; that his jumper was unbuttoned and deceased's gun was in his scabbard. Deceased told him he was shot and asked him to do something for him; that he thought the deceased was shot in the back of his head and he asked deceased, "Do you want me to look?" and he said, "No, don't touch me, just leave me alone until a physician gets here." That the appellant at that time walked around where he could see them in the ditch and said, "Don't touch

that man, leave him alone"; that he told the appellant, "I want to get a doctor," and he said, "No, don't get a doctor, don't get anybody, just leave him alone," and that the appellant still had his gun and he put up his hands and said, "Don't shoot." That the fellow that was with the appellant said, "He isn't going to shoot you," and the appellant said, "No. I am not going to shoot you, there is one man already shot here," and told him, "All of you come out of here and leave him alone"; that he walked out to the road where the witness' truck was parked and then walked off. The witness then got in the truck and went to the phone and called a doctor.

The testimony of this witness was corroborated substantially by his father, a witness for the state, and also by Aud Parish, who was introduced as a witness for the defendant.

The testimony of the doctor called to wait on the deceased was to the effect that the deceased had been shot in the back below his right shoulder blade, the bullet ranging up; that there was an injury to his spine by reason of said shot and he was paralyzed in his lower limbs and had no use of his body from the wound down, but he had the use of his hands.

The evidence further shows that the deceased died from the effects of said wounds a day or two later.

There are only two bills of exception appearing in the record proper. Bill No. 1 sets out that before the argument in the case was begun, the sheriff placed a number of chairs within the railing and bar of the court and in the close proximity to the jurors and invited the wife of the deceased and several minor children to occupy said seats and that they did so occupy them, and during the period of about one hour while counsel for the state and defendant were making the two opening speeches to the jury, said widow and children of the deceased frequently, obviously, and audibly wept in the presence, sight, and hearing of the court and jury all through said period without objection, protest, or exception on the part of anyone, except that the court beckoned to the sheriff and in a low tone of voice instructed the sheriff to tell the family of the deceased that they must stop crying or leave the court room, after which they were more composed but some still quietly wept and sobbed. That the district attorney, in closing his argument for the state, used the following words: "The counsel for the defendant will make a plea to you, gentlemen of the jury, for sympathy for the accused and his family, but I want to say to you that I am the representative of the weeping widow and orphaned and weeping children now before you, and in their behalf I appeal to you for a conviction. In behalf of this sorrowing woman, I say to the defendant, in the language of Poe to the Raven, 'Take thou thy beak from out my heart, thy bust from off my door.'"

The bill further shows that counsel for the defendant rising to reply,

soon, but not immediately upon the conclusion of the above quoted remarks, and before beginning his argument to the jury, addressed himself to the court, and said substantially as follows: "I wish to object, protest, and except to the presence within the bar of the weeping family of the deceased and to object and except to the argument of the district attorney, especially that part above quoted, on the ground that it was an improper invasion of the rights of the accused and was done to get before the jury emotional facts and was creating a favorable atmosphere and dramatic setting for the impassioned eloquent peroration of the district attorney, and was inflammatory and prejudicial to the rights of the defendant, all the more so because not in retaliation to any like improper acts or threatened or contemplated acts of the defendant or defendant's counsel; that not having produced the family of the defendant in court or contemplated doing so or having made any appeal, either to the sympathy or prejudice of the jury, nor attempted so to do; same being further objectionable as an incorrect statement of the relation of the parties and the object of the trial."

Counsel for defendant thereupon appealed to the court for protection from further attacks of same or similar nature on the part of counsel for the state for the family of the deceased. The bill further shows that the court thereupon admonished the family of the deceased to keep order in court or they would be removed and for the counsel for the defendant to proceed, but made no comment of any kind on the remarks of the district attorney, either to him or to the jury or otherwise.

This bill was sought to be qualified by the trial judge but inasmuch as the appellant objected to said qualification, it cannot be considered by this court. The bill itself shows that no objection was made to the sitting of the wife of the deceased within the railing of the court, and it also shows that they occupied said seats during the period of about one hour while counsel for the state and appellant were making their opening speeches to the jury, and that during said time no exception was taken to their audibly crying in the presence of the jury, but was allowed to continue for said period without objection, protest, or exception on the part of anyone. The bill does not show that there was any request made to the court to instruct the jury to disregard said argument or any request to exclude the family of deceased from within the railing, nor was any objection made to any of the matters thus transpiring, until the said argument complained of was concluded, nor does the bill show that there ever was any special charge requested on the subject. This is ordinarily held necessary. Tro v. State, 101 Texas Crim. Rep., 185, 274 S. W., 634. See Schroeder v. State (Texas Crim. App.), 36 S. W., 94; Trotter v. State, 37 Texas Crim. Rep., 468, 36 S. W., 278; Carver v. State, 36 Texas Crim. Rep., 552, 38 S. W., 183; Gent v. State, 57 Texas

Crim. Rep., 414, 123 S. W., 594; Railey v. State, 58 Texas Crim. Rep., 1, 121 S. W., 1120 and 125 S. W., 576.

Nothing in the trial of a case should be done or said, if it can be avoided, that is calculated to prejudice the rights of the defendant or prejudice him in the eyes of the jury. Granting that the proceedings and the argument should not have taken place, it is not made to appear from said bill or from the record that the proceedings or argument were of such character that injury did result to appellant by reason thereof. The argument might have been withdrawn from the jury had counsel requested the court to withdraw the same. Apparently, however, not enough importance was attached to it as to cause appellant to ask any written or oral charge regarding the matter. Under the record as it appears, we cannot say that the matter complained of was of that character which was clearly calculated to prejudice the rights of the appellant.

By bill of exception No. 2, appellant complains that in the concluding argument of the state, the Hon. W. S. Poston, privately employed counsel, stated: "Gentlemen of the Jury,. with regard to this Goddamed s— of a b— statement, there is not a word of testimony in the record except from the defendant himself."

To his language, counsel for the defendant objected and excepted, giving as his reason that state's counsel was engaged in his closing argument and was misquoting the record to prejudice and injure the defendant on a material matter of. importance to which counsel for the defendant would have no opportunity to reply. The bill further shows that the court reporter was then called upon to search the testimony to ascertain if such statement could be found in the testimony of W. R. Barclay and not being found, Barclay was introduced and testified that to the best of his knowledge he did not use the statement. The court then, while further search of the record was being made, discharged the jury and permitted them to retire, after which the reporter found the expression referred to and testified to by the witness Winnard Huff, but too late to submit to the jury before its retiral.

The bill itself is indefinite. There was no request shown by said bill to instruct the jury to disregard the statement so made, but simply an objection thereto for the reason stated. The bill does not disclose the connection in which it was used, and it is not every improper argument that will require the reversal of a case for failure of counsel to confine themselves to the record. It must be made to appear from the record that it was such character that injury would result to defendant by reason thereof. This the bill fails to show. In the case of Tweedle v. State, 29 Texas Crim. Rep., 591, 16 S. W., 544, 545, Judge Davidson, in discussing an argument which was complained of as being improper, used this language: "Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause. The remarks

must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the rights of the defendant. To reverse in all cases where counsel failed to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel on either side. It would be a remarkable coincidence if this were not true."

In his motion for new trial, appellant sets up, as one of the grounds upon which he should be granted a new trial, that after the jury retired to deliberate this case, they received other testimony in that the jury discussed the previous bad reputation of the appellant. The record shows that the trial court heard evidence upon this issue, and there accompanies this record a question and answer statement of facts on this matter. The statement of facts of the evidence heard on the matter for a new trial as to the jury receiving other evidence cannot be considered because the same is not in proper form. The examination of same reveals that it is entirely made up of a statement of questions and answers and of objections made by appellant and by state's counsel and also remarks made by them to the trial court and by the trial court to them and to the witnesses, and this condition is revealed by all the 61 pages of the purported statement of facts on said motion, and no bill of exception is in the record containing said evidence.

In the case of Griffin v. State, 115 Texas Crim. Rep., 306, 29 S. W. (2d) 790, where on a motion for new trial appellant averred that the jury had separated during the trial, Judge Hawkins, speaking for the court, said: "Upon the hearing of the motion evidence was heard upon the point. It is brought forward in a question and answer statement of facts. In this form it cannot be considered." Citing Jacobs v. State, 92 Texas Crim. Rep., 253, 242 S. W., 232; Jenkins v. State, 93 Texas Crim. Rep., 375, 247 S. W., 861; Fenton v. State, 93 Texas Crim. Rep., 366, 248 S. W., 363. See, also, Robbins v. State, 100 Texas Crim. Rep., 592, 272 S. W., 176; Harry v. State, 102 Texas Crim. Rep., 124, 277 S. W., 653.

Without a statement of facts in accordance with the law, there is nothing to show that the trial court abused his discretion in overruling appellant's motion for a new trial upon the ground that the jury received other evidence after their retiral, as set out in appellant's motion for a new trial.

We note that the verdict of the jury finding the appellant guilty assessed his punishment at fifteen years in the penitentiary, while the sentence fixed his punishment at confinement in the penitentiary for a straight term of fifteen years. The sentence will therefore be reformed so as to assess appellant's punishment at confinement in the penitentiary for an indeterminate period of not less than two nor more than fifteen years,

and as so reformed, no reversible. error appearing, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.