Archie Lee **WILSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–87–164 CR.

Court of Appeals of Texas,
Beaumont.

March 9, 1988.

Discretionary Review Refused
June 8, 1988.

Douglas M. Barlow, Beaumont, for appellant.

John R. DeWitt, Asst. Criminal Dist. Atty., and Tom Maness, Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was indicted for the offense of burglary of a building allegedly occurring in Beaumont on November 1, 1986. The indictment had enhancement paragraphs alleging that the Appellant had been convicted of three prior felony offenses.

The jury found the Appellant guilty of the offense of burglary of a building. The jury then found the enhancement paragraphs to be true and assessed the Appellant's punishment at 50 years confinement.

Appellant's first point for review states that reversible error occurred when the State's attorney referred to matters outside the record in his argument. The Appellant had zealously urged a vigorous defense that he was not the person who actually committed the burglary. He was, as he contended, heavily intoxicated and was in the wrong place at the wrong time. In fact, the Appellant, through the testimony of one Stephen Livings, demonstrated that Livings was the person who committed the offense. The Appellant presented the testimony of one Slaughter Moore. Moore testified that the Appellant was, in fact, intoxicated and that he and the Appellant had been drinking together on the day in question.

The main thrust of the defense of the Appellant depended on the credibility and the believability of these two witnesses. The credibility of both witnesses was strongly attacked by the State. The prosecutor *told the jury that these two men had been placed together in a holding cell and strongly argued certain discrepancies in their respective testimonies.* Appellant basically argues that the statement that the two witnesses were in the same holding cell was necessarily outside of the record and was made in an effort to inflame and prejudice the minds of the jurors. Appellant further argues that his objection was overruled so that the error could not be corrected by any subsequent instruction to the jury to disregard the argument.

The State concedes that the attacked portion of the prosecutor's argument was outside the record but, upon a careful analysis, the same record discloses that such argument *does not present reversible error.* The State argues that where, as here, a timely objection was overruled; nevertheless, the Appellant is not entitled to reversal of the judgment because, in light of the record as a whole, the argument is not so extreme and not so manifestly improper as to be violative of a mandatory statute or actually injects new facts harmful to the accused in the trial proceeding. The State cites *Todd v. State,* 598 S.W.2d 286 (Tex. Crim.App.1980); *Hall v. State,* 682 S.W.2d 608 (Tex.App.—Beaumont 1984, no pet.). The challenged argument did not specifically and affirmatively violate a mandatory statute. The argument does inject a new fact before the jury. However, we conclude that the record, as a whole, clearly shows that such new injected fact or contention was not "harmful to the accused". The State vehemently contends that its own case and evidence established an overwhelming conviction of Appellant's guilt and that the testimony of the Appellant's key witnesses was patently preposterous and incredible on its face. The State argues that its own piercing cross-examination of the key defense witnesses; namely, Stephen Livings, Ulysses Brown and Van Slaughter Moore, demonstrated in a glaringly clear manner that the testimony of these three witnesses was simply incredible.

An officer named Hogge was dispatched, on the date in question, to a probable burglary actually in progress at Poncho's Paint and Body Shop. Upon arriving, Hogge looked into the well-lighted office and saw the Appellant, who was prowling about the office. Hogge definitely and positively identified the Appellant as the man he saw *inside Poncho's Shop.* The Appellant ran from the building. Hogge pursued him hotly. Hogge saw that the Appellant was carrying a yellow film bag which was recovered at the scene of the arrest. Hogge also found the "Redskins" cap which he had seen being worn by the Appellant while the accused was inside Poncho's Paint and Body Shop; the cap had flown off Appellant's head. Later, when Hogge and another officer, named Froman, entered a certain washateria, the Appellant sprang up from a back row of washers. Appellant was very sweaty and breathing hard. The yellow bag and some loose change was recovered from the floor area where the Appellant had been hiding. The "Redskins" cap had been recovered where Hogge had seen it fly off the Appellant's head.

We have reviewed the cross-examination of Hogge concerning Ulysses Brown. Brown stated that the Appellant "had just run into the washateria." Hogge said the Appellant was not intoxicated. An officer, Sue Kelly, testified that she had recovered Appellant's fingerprints from a certain peanut can in Poncho's office.

Rudy Carrillo, being the proprietor of Poncho's Paint and Body Shop, testified that he had not given consent to anyone to enter. He identified the "Redskins" cap as having been in one of his office drawers. He also testified that the film in the yellow bag had definitely come from his own office. There was, of course, other compelling, probative testimony.

After reviewing and analyzing the testimony of Ulysses Brown, Officer Sue Kelly, Officer David Froman, Rudy Carrillo and others, including Van Slaughter Moore, Loretta Champagne, Grace Strange, Gerald Hayes, and Carla McBride, we conclude upon the whole record that it is impossible to seriously believe that the inadvertent remark of the prosecutor caused any harm to the Appellant. Hence, there is no reversible error. *Phillips v. State,* 701 S.W. 2d 875 (Tex.Crim.App.1985); *Cannon v. State,* 668 S.W.2d 401 (Tex.Crim.App.1984); *Mathews v. State,* 635 S.W.2d 532 (Tex. Crim.App.1982); *Williams v. State,* 607 S.W.2d 577 (Tex.Crim.App.1980); *Hall v. State,* 682 S.W.2d 608 (Tex.App.—Beaumont 1984, no pet.); *Harris v. State,* 624 S.W.2d 418 (Tex.App.—Eastland 1981 [661 S.W.2d 106]).

Justice Teague, in his opinion in *Mathews,* 635 S.W.2d at 540, above cited, quotes the following logical, compelling and appro-

priate conclusions from the early case of *Tweedle v. State*, 29 Tex.App. 586, 16 S.W. 544 (1891, no pet.):

"To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true. (*Tweedle*, Id., 16 S.W. at p. 545)."

We overrule point of error one.

■ The Appellant advances that the trial court erred in admitting State's Exhibit No. 18, which is a pen packet, into evidence at the punishment phase. It should be noted that the prior conviction which was reflected in State's Exhibit 18 was not void. Hence, the trial court did not commit error in submitting it into evidence. State's Exhibit No. 18 contained a judgment in 1978, being a conviction for aggravated robbery, reciting that the then trial court, on a plea of guilty, assessed six years in the Texas Department of Corrections. The sentence said that the Defendant had been assessed punishment at six years, but then the sentence incorrectly stated that the indeterminate sentence law recited a minimum of two years instead of the correct minimum of five years. We hold this mistake did not render the conviction void.

It is settled that a final conviction alleged for enhancement may be collaterally attacked only if it is void or if it is tainted by a severe constitutional defect. Irregularities in the sentence or judgment may not be raised by collateral attack even if such irregularities and defects might have conceivably resulted in a reversal if they had been presented on appeal. *Galloway v. State*, 578 S.W.2d 142 (Tex.Crim.App. 1979). It has been the recognized rule, consistent with the steady holdings of the Court of Criminal Appeals, that any irregularity in a judgment or sentence which may be reformed on appeal is not void and may not be, for that reason, collaterally attacked. *Bowles v. State*, 550 S.W.2d 84 (Tex.Crim.App.1977); *Aquirre v. State*, 168 Tex.Cr.R. 625, 331 S.W.2d 64 (Crim.App.

1960). *See Morgan v. State*, 703 S.W.2d 339 (Tex.App.—Dallas 1985, no pet.); *Barnes v. State*, 635 S.W.2d 139 (Tex.App. —Houston [1st Dist.] 1982, no pet.) Hence, this point of error two is overruled.

■ The next three points of error attack the parole law instruction, stating that the same is fundamental error, unconstitutional and that the charge is so misleading as to cause egregious harm to the Appellant as a matter of law.

The controlling case is now *Vernon Lee Rose v. The State of Texas*, No. 193–87, in the Court of Criminal Appeals, "Opinion on Appellant's Petition for Discretionary Review", delivered November 12, 1987. *See Rose v. State*, 724 S.W.2d 832 (Tex.App.— Dallas 1986).

There was no objection to the parole law instruction. The majority view in *Rose, supra* (in the Court of Criminal Appeals) requires, definitely, that the complaining Appellant must show that egregious harm has definitely taken place as required by *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.—1985). We find no such "egregious harm".

In this appealed case, the Appellant was convicted of the offense of burglary and the jury found that he had been previously convicted of three prior felonies as set out in the enhancement paragraphs of the indictment. Hence, under *TEX. PENAL CODE ANN. sec. 12.42(b)* (Vernon 1974), a range of punishment came into effect. The range was from life or any term not more than 99 years, but not less than 25 years. The minimum sentence the jury could assess was 25 years and, of course, a verdict for life would have been fully warranted under this record. The jury assessed punishment of 50 years. This tends to strongly negate any possibility that the verdict was influenced by the subject parole law instruction to the extent that the Appellant was denied a fair and impartial trial. *Almanza, supra.*

The burden was on the Appellant to demonstrate, as *Almanza, supra*, requires, that he was egregiously harmed by the said instruction. Appellant has failed to do this. The court's opinion in *Rose v. State*,

*supra,* in the Court of Criminal Appeals, rejects the concept that merely by giving the instruction warrants and requires a leap to the conclusion that egregious harm has actually resulted. It must be borne in mind that this Appellant did not object to the parole law instruction and, in complete candor, he has conceded *that any claim to reversal must be based on "fundamental error".* This, the Appellant has failed to do.

Judge Sam Houston Clinton, writing the lead opinion, joined in part by Judge Duncan, concluded that in telling the jury it could consider the parole law instruction infected the punishment phase and was calculated to deny the right of an accused to a fair and impartial trial on the issue of punishment. Nevertheless, "the majority view, i.e., the concurring opinions (Judges Onion, Teague, Miller, and Campbell) and the dissenting opinions in dicta, indicated that an *Almanza,* 686/157 harm analysis should be employed ... The majority view found that the error was not sufficient to find that appellant had not had a fair and impartial hearing on punishment. The consequence is that while a majority finds error in giving the instruction, it also holds the error does not call for reversal." Significant Decisions of the Court of Criminal Appeals, January 1, 1987—December 16, 1987, 1988 Regional Judicial Conference, by Hon. Charles F. Campbell, Jr., Judge, Texas Court of Criminal Appeals, Austin, Texas, Conference held in Huntsville, February 10–12, 1988.

Of compelling interest is *Sanchez v. State,* 722 S.W.2d 781, 785 (Tex.App.—Dallas 1986, pet. ref'd), which case recites:

"In short, we hold that it is not our duty to locate the places in the record where egregious harm is buried. Instead, appellants must show the locale and the State must convince us that no reversal may be found in that area. If an appellant fails to meet his burden, we overrule points of error pertaining to *Almanza's* fundamental error. In the present case, appellant failed. We overrule appellant's first point of error." (Emphasis theirs)

Finding no error in the points of review numbered three, four and five, the same are overruled.

*TEX.R.APP.P. 81(b)(2)* provides:

"(2) *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

We have applied this rule setting out the criteria for reversible error in criminal cases. Under this record, we determine, beyond a reasonable doubt, that the error complained of made no contribution to the conviction or the punishment. Therefore, the judgment and sentence below are affirmed.

AFFIRMED.