## JANUARY, 1910.

### T. L. RAILEY v. THE STATE.

No. 4010. Decided June 19, 1909.

Rehearing denied December 22, 1909.

Writ of error refused January 13, 1910.

**1.—Burglary—Indictment—Definition of Offense.**

Under article 841, Penal Code, burglary may be constituted by the discharge of firearms or other deadly missile into a house with intent to injure the person therein, and the intent to injure need not be a felony; and it is not necessary that the indictment allege that such act was done with intent to commit a felony, as it is burglary per se to shoot into a house with intent to injure an occupant thereof, and it becomes immaterial whether the party had a felonious purpose or not. Davidson, Presiding Judge, dissenting.

**2.—Same—Plea in Abatement—Carving—Nolle Prosequi.**

In a prosecution for burglary, based upon the charge that defendant had shot into a house with intent to injure the occupant thereof, there was no error in permitting the State to nolle prosse an indictment for assault with intent to murder based upon the identical transaction, over the objection of the defendant, who insisted upon being tried for said assault first, before being placed on trial on another indictment charging him with burglary, as above stated. The State has the right to carve the offense.

**3.—Same—Statutes Construed—Burglary Defined.**

Article 841, Penal Code, defines a separate and distinct offense, under which the discharge of firearms into a house, with intent to injure the occupant thereof, is burglary per se, and said article is but an addition to articles 838 and 839, Penal Code, in further defining the offense of burglary. Following Garner v. State, 31 Texas Crim. Rep., 22. Distinguishing Hammons v. State, 29 Texas Crim. App., 445. Davidson, Presiding Judge, dissenting.

**4.—Same—Case Stated—Sanctity of Home.**

Where defendant was charged by separate indictments based upon the same transaction, one of such indictments being for assault with intent to murder, and the other alleging burglary by shooting a gun into the dwelling house of Charles Schmidt, with intent to injure him, there was no error in permitting the State to dismiss the assault to murder indictment and prosecute defendant for the burglary, as alleged, and it was immaterial whether defendant simply committed an aggravated or simple assault, as the object and purpose of article 841, Penal Code, is to protect the sanctity of the home, and it was immaterial whether the defendant had a felonious intent or not in shooting in said house. Davidson, Presiding Judge, dissenting.

Vol. LVIII. Crim.—1.

**5.—Same—Jury and Jury Law—Talesmen—Practice.**

Upon trial for burglary, where the court ordered a number of talesmen to be summoned to complete the regular panel of the jury, who were tested on their voir dire, there was no error in refusing the request of defendant to have the names of all the jurors placed in a box and drawn therefrom; besides, the court granted said request insofar as the talesmen were concerned.

**6.—Same—Evidence—Other Transactions.**

Where, upon trial for burglary, defendant had not laid a predicate to impeach the prosecuting witness, there was no error in excluding testimony as to violent and profane language and conduct of State's witness towards a third party not involved in the case and at some time prior to the offense.

**7.—Same—Evidence—Insulting Conduct to Female Relation—Reputation of Prosecuting Witness.**

Where, upon trial for burglary for shooting into a dwelling house with intent to injure the prosecuting witness, it was no defense that said witness had used insulting language and conduct towards the defendant's wife, so as ordinarily to reduce the offense to an aggravated assault, and the exclusion of testimony corroborating such theory of defense was not error.

**8.—Same—Evidence—District Attorney—Carving—Harmless Error.**

Where, upon trial for burglary for shooting into a house with intent to injure the occupant, the defense had been permitted to introduce in evidence the fact that the district attorney had dismissed the case of assault with intent to murder against the defendant, and which was based on the same transaction, there was no error in permitting the district attorney to testify as to his reasons for such dismissal, which was that the State could not carve two convictions out of the same facts; besides such testimony, while all inadmissible, was harmless error.

**9.—Same—Evidence—Opinion of Witness.**

Upon trial for burglary, where the rejected testimony was an opinion of the witness, and besides, the form of the question was improper, and the same testimony was, in fact, elicited in a subsequent examination of the witness, there was no error.

**10.—Same—Election by State.**

Where, upon trial for burglary, based upon two counts in the indictment, one of which only was submitted to the jury, this constituted an election.

**11.—Same—Argument of Counsel.**

Where, upon trial for burglary, State's counsel, in his address to the jury, stated that the defendant interposed technical objections to prevent the State from proving certain facts, and the court instructed the jury to disregard this argument, there was no error.

**12.—Same—Argument of Counsel.**

Where, upon trial for burglary, the State's counsel, in his closing argument, stated: "Let us now get rid of slop that is always injected in a criminal trial by the defendant," and the court instructed the jury not to consider said language, there was no error.

**13.—Same—Argument of Counsel—Biblical Quotation.**

Where, upon trial for burglary, defendant's counsel quoted the language of the Savior: "Suffer little children to come unto me," etc., and the State's counsel had replied thereto in a somewhat sacrilegious vein, while improper, was not reversible error.

**14.—Same—Misconduct of Jury—Evidence Dehors the Record.**

Where, upon trial for burglary by shooting into a house with intent to injure, etc., the jury in their retirement permitted one of the jurors, who had been on the building before, to draw a diagram, in addition to the diagrams intro-

duced in evidence, but such diagram could not, under the circumstances, have injuriously affected the rights of the defendant, there was no reversible error.

**15.—Same—Charge of Court—Self-Defense.**

Where, upon trial of burglary for shooting into a house with intent to injure, etc., the court in all respects properly presented the law of the case, including self-defense, there was no error.

**16.—Same—Writ of Error to U. S. Supreme Court Denied.**

See opinion for a case involving no Federal question and where writ of error to Supreme Court of the United States is denied.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. E. R. Campbell.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The State's testimony showed that the defendant and the alleged injured party were neighbors; that they lived in the suburbs of the city of Houston; that on the day of the difficulty, in the afternoon, defendant's wife drove up in a buggy near the fence of the prosecuting witness to hitch her horse; that the prosecuting witness approached her to collect a bill of $5 which defendant owed him as the balance due on some buggy wheels, which he had sold defendant some time before; that defendant's wife handed him a dollar, and that thereupon prosecutor asked for the other $4; that she replied that that was her husband's business, and that she then called prosecuting witness vile names and slapped at the witness with her hand, and that when she saw she could not reach him with her hand she ran to the buggy and grabbed the whip and tried to get up near the fence to strike the witness; that then the witness's wife called him, clapping her hands to attract his attention, and he went into his house with his wife, and sat down to the table to eat supper; that then the defendant came to the window and shot through the window, saying at the time he was going to kill prosecuting witness; that the blinds of the window were open, the window was up and the wire screen was down; that the prosecuting witness was pretty badly hurt and kept in bed for several weeks; that some of the shot grazed the face and head of witness's wife, but her injuries were slight:

The testimony of the defense was that defendant, just before his wife drove up to the fence, got out of the buggy and went into a saloon some sixty feet away from the fence; that his attention was called to the altercation between his wife and the prosecuting witness; that he saw said witness slap his wife, and that then defendant immediately ran to the scene of the difficulty; that his wife told him then that the prosecuting witness had slapped her in the face and had called her very vile names and used very abusive language towards her, calling her a bitch and a whore; that it appeared to her as if the defendant was trying to get over the

fence to harm her, and that she then went to the buggy to get the whip; that the wife of prosecutor clapped her hands in approval of her husband's conduct, and that they then both turned and went into the house. After this statement from his wife defendant became very much excited, and immediately went into his house and got his shotgun and proceeded to find the prosecuting witness to call for an explanation of his conduct, and for the further purpose of arresting said witness for a breach of the peace (the defendant being an officer); that defendant went near the house of prosecuting witness and called him several times, but received no answer, and as defendant passed by the window he saw the prosecuting witness reach for a pistol, when he, the defendant, fired at him through the window; that defendant fired but once; that defendant had no intention of killing the prosecuting witness, and could have done so had he so intended; that he shot in self-defense; that he simply took his gun with him to defend himself should the said Schmidt attempt to assault him in the course of the explanation which defendant demanded of him for insulting his wife; that the defendant knew of the violent temper of the said Schmidt, and that this was another reason for taking his gun.

Leaving out formal parts, the indictment alleged, "did unlawfully, fraudulently, burglariously and wilfully, in the daytime by force and breaking, commit the offense of burglary, by then and there discharging firearms, to wit, a gun, into the dwelling house of Charles Schmidt, with the intent to injure the said Charles Schmidt, who was then and there in said house, which said house was then and there occupied and controlled by the said Charles Schmidt, without the consent of the said Charles Schmidt and with the intent then and there upon the part of him, the said T. L. Railey, to injure the said Charles Schmidt, who was then and there a person within said house."

Among other things, after defining the offense, etc., the court charged the jury: "In order to authorize a conviction in this case you must believe from the evidence not only that the defendant discharged a gun into the house of the said Charles Schmidt, but you must further find and believe from the evidence beyond a reasonable doubt that he discharged said gun into said house with the intent to injure the said Schmidt, the intent with which the defendant discharged the said gun into the said house, if he did so, being a necessary element of the offense."

"If from the evidence you believe that the defendant fired a gun into the house of Charles Schmidt, but should further believe that at the time of so doing the said Charles Schmidt was making or about to make an attack on the defendant, from which attack and the manner and character of it, or the apparent preparation thereof, if any, and the defendant's knowledge of the character and the dis-

position of the said Charles Schmidt, it then and there reasonably appeared to the defendant that the said Charles Schmidt was about to kill, or inflict serious bodily injury, upon him, and that acting under such reasonable appearances of danger, of death, or serious bodily injury, the defendant shot into the house of the said Charles Schmidt, he would not be guilty, and if you so find, or if you have a reasonable doubt thereof, you will find him not guilty; or if from the evidence you should believe that the defendant did fire a gun into the house of the said Charles Schmidt, but you should further find and believe from the evidence that at the time he did so it reasonably appeared to the defendant from the acts and conduct of the said Charles Schmidt, that he, the said Charles Schmidt, was attempting to obtain a gun with which to make an assault upon the defendant, and that it then and there reasonably appeared to the defendant that he was then and there in immediate danger of death or serious bodily injury as the result of such threatened attack and he fired said gun for the purpose of preventing such threatened assault, he would not be guilty, and if you so find, or if you have a reasonable doubt, you will find him not guilty. In this connection you are charged that the question as to whether danger of death or serious bodily injury was, or not, reasonably apparent to the defendant as set forth in the foregoing paragraph of this charge, at the time he fired the gun into the house of Charles Schmidt, if you find he did so, should be considered and determined from the defendant's standpoint, and it is immaterial whether such danger was real or not, provided it was reasonably apparent to the defendant, and if such danger was reasonably apparent to him from his standpoint, he would not be required to retreat in order to avoid shooting the said Schmidt, but while you are to view the question as to whether such danger was or not reasonably apparent to the defendant from his standpoint and as it reasonably appeared to him, in determining that matter you will take into consideration all the facts and circumstances in evidence.

*T. H. McGregor* and *Brockman, Kahn & Williams* and *A. S. Fisher* and *E. T. Branch,* for appellant.—The court, in its original opinion herein, which was in fact its only written opinion, erroneously adjudicated the issues involved and erroneously construed the effect of articles 838 and 841 of the Penal Code, and erroneously substituted the means of "force and breaking" for the "intent," which, in law, under article 838 (which is the only article in the statutes of Texas, which defines the "intent" with which an entry must be made in order to constitute burglary), must accompany the breaking as the "ulterior purpose" of the breaking, to constitute any species of an entry, burglary, whether the "force and breaking" be by battering down the door, by raising a window, or any of the

other methods and modes mentioned in articles 840 and 841, of the Penal Code, including that "it may consist of the entry of any part for the purpose of committing a felony," and including the provision following the above, to wit, "or it may be constituted by the discharge of firearms or other deadly missile into the house, with intent to injure any person therein." All of the methods and modes mentioned in the statutes by which the test of a sufficient breaking and force is to be made, are complete and in themselves constitute "per se force and breaking," but none of said methods have anything to do with the "intent" with which such breaking is done, that intent is to be found only in article 838, and articles 839 and 839a, which alone, of all the statutes upon the subject, defines the character of "intent" necessary in any species of a breaking or entry to bring such breaking within the definition of a burglary.

The breaking is a mere trespass, and it is the "ulterior" "intent" with which such breaking is accompanied which characterizes it as burglarious or not, that "intent," under our statutes, must be to commit either theft or a felony.

Unless article 841 is a general article of entry and not of intent, as otherwise contended herein, then the indictment in this case does not charge an offense for the reason that burglary of a dwelling house (private residence) can not be committed under the statute by discharging firearms into the same. The punishment affixed for the burglary of a private residence in this article 845a is not less than five years and has no maximum limit. So it will be seen at a glance that the severity of the punishment for the burglary of a private residence is much greater than the burglary of a house. The appellant in this case was given a penalty of two years in the penitentiary and yet the record shows that if the offense was committed at all, it was committed in a private residence. So the jury have affixed, in this case, the punishment prescribed under a different statute for the burglary of a private residence. So the punishment affixed is an unlawful punishment, and for this reason also this case should be reversed.

That article 841 is a mere definition of "entry," and an addition to and explanation of the word "entry" as used in articles 838 and 839 is well settled in the Mason case, 100 S. W. Rep., 383, and followed by this court in Williams v. State, 53 Texas Crim. Rep., 2. In the Mason case Judge Brooks, speaking for the court, says: "The subsequent articles 841 and 842 are simply amplifications and explanations of article 838, and the legislative intent is clearly to be deduced from a careful reading of all the articles conjointly to the effect that no purpose was expressed or intended by the Legislature to modify article 838." And again the opinion reads: "We are constrained to hold that article 841 did not intend to abrogate the

express terms of article 838, but was simply an amplification upon, an addition to and explanation of article 838." In the Williams case, supra, opinion by Judge Davidson, the Mason case was followed. These cases hold that articles 840 and 841 are not intended as creating an offense, but are merely explanatory and do not restrict or abrogate article 838.

The intent necessary to constitute a burglarious entry must be to commit a felony or theft according to article 838, and no mere subsequent explanation or illustration of an "entry" can "abrogate" the plain terms of article 838. Articles 840 and 841 are couched in clear and unambiguous terms, and no more create an offense than some definition in the Code of Criminal Procedure. The construction placed upon the definition of "entry" (which is all that articles 840 and 841 are), has always been held to be explanatory and not creative of a separate offense. Article 840 defines "entry" as one made without the free consent of the occupant, and it has been often held that this definition did not dispense with or abrogate the element of "force," as used in article 838, but that every element of burglary as contained in article 838 must be proven.

One of the ablest of these opinions is Hamilton v. State, 11 Texas Crim. App., 116, in which Judge Hurt, for the court, reviews all these articles, and in which he says: "Articles 704 and 705 (now 838 and 839) define the offense. Articles 706 and 707 (now 840 and 841) define entry. The object and purpose of these two articles is to define and illustrate that which constitutes an entry; the subject matter upon which the mind of the legislator is acting and about which he is speaking being entry, and not force" (page 121); and again on the same page he says: "Burglary is composed, 1st, of entry; 2d, the means resorted to to effect the entry; 3d, the purpose or intent of the entry. And we find authors and Supreme Courts in their opinions, treating at great length each of these subdivisions *as separate and distinct matters."* (Italics ours.)

If articles 840 and 841 made the acts therein defined a penal offense it would be burglary to enter an open door, or to put the hand through a hole in a house, regardless of intent. Nor do articles 840 and 841 have a penalty affixed by the written law of this State, and if they were meant to define offenses would be in violation of article 3 of the Penal Code. That they are not intended to be of themselves penal offenses is shown by the failure to affix a penalty thereto, and that they are mere explanations, and not intended to "abrogate" the elements of the offense as made by article 838, is shown clearly by the reasoning set out in the Mason and Hamilton cases. Burglary, under our Code, can not be committed unless the intent be that denounced by article 838, and no definition of an "entry" can add to or abrogate the "intent."

The right of self-defense is a God-given right which the laws of

man can not take away. Instinct has taught it to wild beasts, custom to all nations and reason to enlightened people. A man shooting into a house in self-defense would be shooting "with intent to injure," but would be guilty of no offense. In the original opinion in the case at bar, the court say it was made burglary per se to shoot into a house with intent to injure, to protect the sanctity of the home. The sanctity of the home is lost when the assassin screens himself therein and shoots at one on the outside. Even against that ambush one would have the right to shoot into the house "with intent to injure" to defend himself. The home was never intended as a place where a man could place himself in ambush and shoot down the passerby or even an enemy; nor would it be a sanctuary should a citizen see his wife in the act of carnal intercourse with the occupant therein, willing or unwilling, such as could prevent him from shooting into the house even to kill such man under such circumstances, as the statute (P. C., art. 672), gives that plain right; nor was it ever intended that a man could leave his home and strike his neighbor's wife and insult her with vile epithets, and by fleeing to his own house, on approach of the husband be protected from at least being called on to explain by the husband.

The home is a "sanctuary" only so long as the occupant makes it so. If the Legislature had intended to make a shooting into a house "with intent to injure" burglary per se, it would have been included in the original definition of burglary. Not having done so, a mere definition of one element, to wit, the entry, can not be read back into the original article.

Under all the authorities an indictment, to be sufficient to charge the offense of burglary, must allege the "entry" to have been made "with the intent in either case of committing a felony or the crime of theft," and an indictment which falls short of specifically and distinctly alleging such "intent" is fatally defective, and will not support a conviction, and, upon motion in arrest, must fall.

The indictment in the Garner case was held good for a night-time burglary, because "breaking" was not one of the constituents of that offense; and in the Hammons case, the indictment was held bad for burglary, because it failed to allege the "intent" of the defendant at the time he "broke and entered the house." The objection seems not to have been raised, as it was in the Garner case, that the indictment failed to allege, "in specific terms," that "the defendant did break and enter" the house alleged to have been burglarized. So it is apparent that no part of the opinion in the Hammons case is "dicta;" on the contrary, the very gist and essence of that decision is that the indictment was bad for burglary, because the "intent" with which the defendant "broke and entered the house" was not alleged.

Article 841 can not be construed in any other light than as "fur-

ther defining" "entry" to make it harmonious with the other articles of chapter 6, and, under a well settled rule of construction, articles upon the same subject must be so construed as to give harmony and effect to all, if that be possible.

To illustrate:

The article reads:

"The entry is not confined to the entrance of the whole body."

"It (What it? the "entry") may consist of the entry of any part for the purpose of committing a felony."

"Or it (What it? the "entry") may be constituted by the discharge of firearms or other deadly missile into a house, with intent to injure any person therein."

"Or it (What it? the "entry") may be constituted by the introduction of any instrument for the purpose of taking from a house any personal property, although no part of the body of the offender should be introduced."

The very language of the above statute shows that every part of it is intended solely and singly to define the character of the "entry" by which the "burglaries" defined in articles 838, 839 and 839a may be committed. Black v. State, 18 Texas Crim. App., 124; Allen v. State, 18 Texas Crim. App., 120; 2d Bishop New Cr. Law, p. 66, sec. 110; Robertson v. State, 32 Texas, 159; Mason v. State, 100 S. W. Rep., 383; Hammons v. State, 29 Texas Crim. App., 445; Albrecht v. State, 8 Texas Crim. App., 313; Murray v. State, 21 Texas Crim. App., 520; McLelland v. State, 15 Texas, 319; Smith v. State, 18 Texas Crim. App., 454; Robinson v. Varnell, 16 Texas, 382; Tompkins v. State, 4 Texas Crim. App., 161; State v. De Gress, 53 Texas, 387; Williams v. State, 53 Texas Crim. Rep., 2; Vaughan v. State, 9 Texas Crim. App., 563; Stephanes v. State, 21 Texas Crim. App., 206; People v. Jenkins, 16 Cal., 431; State v. Cooper, 16 Vermont, 551; State v. Bell, 29 Iowa, 316; Com. v. Newell et al., 7 Mass., 244; 2 Bishop's New Crim. Law, section 90; Hale P. C., 555; 6 Cyc., pp. 171-172; Anderson v. State, 48 Ala., 665; 2 Bishop's New Crim. Law, sections 110-113; 1 Hawk., P. C. Curw. ed., 129; 3 Inst., 63; 4 Black. Comm., 223-224; 1 Russell on Crimes, 3 Eng. ed., 795; 1 Gab. Crim. Law, 174; 1 Bishop's New Crim. Law, section 342; 26 Am. & Eng. Ency. Law, 2d ed., 616.

The court, in the concluding paragraph of the Garner opinion, cites Searcy v. State, 1 Texas Crim. App., 440, which we have heretofore discussed, and we again call attention to the fact that, in that case, as in the Garner case, the indictment alleged the entry to have been "with the intent then and there of committing a felony, to wit," etc., which allegation is wholly wanting in the indictment in the case at bar, and, therefore, same is insufficient, and

appellant's motion in arrest of judgment should prevail and this case be reversed and dismissed.

The specific intent should be alleged, and where there may be two "intents," and one of them would not be sufficient to amount to felony, or where there may be an intent embracing two or more degrees, one of which might be misdemeanor in a case of alleged burglary or breaking, the case should be prosecuted under indictment covering such latter "intent," and not under an indictment which could, as in this case, only comprehend one of the intents inherent in the transaction as, for illustration, the degrees of assault to murder, and the lower degree of aggravated assault, which are both inherent in the facts constituting this transaction, and yet the indictment in this case as construed by the court in its opinion herein excludes the issue of aggravated assault and deprives appellant of his fundamental right to whatever of mitigation or defense which may be, or is, inherent in, or made by, the facts of the trans-action; in this case by the course pursued by the prosecution, and by the judgment against him he has been deprived of this right. 2 Bishop's New Crim. Law, 94, 110, 113, 116, 117; Wilburn v. State, 41 Texas, 237; Whaley v. State, 9 Texas Crim. App., 305; Chatman v. State, 40 Texas Crim. Rep., 272, 50 S. W., 396.

Where the defendant went to the house of the deceased armed and the shooting resulted, which occurred on the gallery of said house, and the court reversed on this ground, and also on the issue of manslaughter, although deceased was in his home, and this court held in that case that the "sanctity" of the home did not deprive the defendant of his legal defenses, and these two elements are fully as strong in the case at bar as in the Keith case. Keith v. State, 50 Texas Crim. Rep., 63; Nix v. State, 45 Texas Crim. Rep., 504, 78 S. W. Rep., 227; Mitchell v. State, 49 Texas Crim. Rep., 535, 96 S. W. Rep., 43; Stewart v. State, 52 Texas Crim. Rep., 273, 106 S. W. Rep., 685; Lee v. State, 55 Texas Crim. Rep., 379, 116 S. W. Rep., 1153; Quinn v. State, 50 Texas Crim. Rep., 209, 96 S. W. Rep., 33; Shannon v. State, 35 Texas Crim. Rep., 2.

On question of misconduct of jury as to receiving evidence dehors the record: Buessing v. State, 43 Texas Crim. Rep., 85; McWilliams v. State, 32 Texas Crim. Rep., 269; Lankster v. State, 43 Texas Crim. Rep., 298; Ysaguirre v. State, 42 Texas Crim. Rep., 253; Terry v. State, 38 S. W. Rep., 986; Hefner v. State, 44 Texas Crim. Rep., 441; Hughes v. State, 43 Texas Crim. Rep., 511; Hughes v. State, 44 Texas Crim. Rep., 296; Blocker v. State, 61 S. W. Rep., 391; Mitchell v. State, 36 Texas Crim. Rep., 278; Logan v. State, 46 Texas Crim. Rep., 573; Dixon v. State, 46 Texas Crim. Rep., 154, 79 S. W. Rep., 310; Gilford v. State, 49 Texas Crim. Rep., 275, 92 S. W. Rep., 424; Favro v. State, 59 S. W. Rep., 885; Hambright v. State, 49 Texas Crim. Rep., 162, 84 S. W. Rep.,

598; Riley v. State, 81 S. W. Rep., 711; Hardiman v. State, 53 S. W. Rep., 121. On question of rejecting testimony as to defendant's previous violent language and conduct: Poole v. State, 45 Texas Crim. Rep., 348; Berry v. State, 30 Texas Crim. App., 423; Williams v. State, 70 S. W. Rep., 756. On question of admitting testimony of district attorney: Drake v. State, 29 Texas Crim. App., 265; Martin v. State, 42 Texas Crim. Rep., 144, 58 S. W. Rep., 112.

The breaking was but a trespass. The facts disclose at best, or at worst, only an aggravated assault. It is the policy of our law that the punishment should fit the crime. Had appellant been prosecuted for an assault, his punishment, on the identical facts here would, or could, have been but a fine and a jail sentence, while by calling the offense burglary on the same facts he is given a sentence to the penitentiary. This also furnishes strong argument in favor of our contention that the offense intended to be committed must be a felony.

*W. G. Love* and *J. W. Gibons, F. J. McCord,* Assistant Attorney-General, for the State.—It would have been wholly unnecessary for the law makers to have used the words "with intent to injure any person therein" if they only meant by that to say to injure in such manner as to make the defendant guilty of a felony. That sort of legislation would have been foolish and useless because without such provision a defendant could be prosecuted under article 838 for an assault to murder which is about the only offense that would be a felony that one could commit by shooting into a house with the intent to injure. Cited cases in majority opinion.

BROOKS, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at two years confinement in the penitentiary.

The indictment contains two counts. The first charges burglary by shooting a gun into the dwelling house of Charles Schmidt with intent to injure Charles Schmidt; and the second count charges burglary in that said appellant did break and enter with intent to commit a felony in this: That he, the said T. L. Railey, did then and there discharge firearms, to wit, a gun, into the said dwelling house of the said Charles Schmidt, with the intent then and thereby to unlawfully kill and murder the said Charles Schmidt. The court submitted alone the first count in the indictment.

Bill of exceptions No. 1 complains that before this cause was called for trial, cause No. 15548 being upon call, the district attorney filed his nolle prosequi dismissing cause No. 15548 pending in said court, wherein this defendant was charged with assault with a gun upon Charles Schmidt, the alleged injured party in this case, with the alleged intent to murder the said Charles Schmidt, alleged

to have occurred on the 30th day of April, 1908, in Harris County, Texas, and which cause was based upon the same identical facts as are the basis of this transaction, to wit: the shooting into the house of the alleged injured party, Charles Schmidt, and to which motion to nolle prosequi, by the district attorney, defendant objected on the ground that said cause No. 15548, being based upon the same identical facts and the same identical transaction upon which the indictment in this cause was based, that it was important to a fair judicial determination of the charge in this case that said cause No. 15548 be first tried that the issue of whether or not defendant, if guilty, was guilty of assault to murder, or of aggravated assault, or not guilty, be determined, that he might be able to present to the court such pleas of former jeopardy or former acquittal, as might arise from the verdict of the jury under a prosecution of said cause No. 15548; because the offense of burglary by the law of this State, as defined by articles 838 and 841 of the Penal Code, could only be constituted by an unlawful entry with the intent to commit theft, or a felony, and should the jury in said cause No. 15548 find defendant guilty of aggravated assault under the facts in evidence in this case, and it is here stated as a fact that defendant then and there claimed that the facts which would be adduced on the trial on behalf of defendant would show, that immediately prior to the shooting, the alleged injured party, Charles Schmidt, slapped the wife of defendant in the face in view of defendant, defendant being at that time 200 or 300 feet distant, and also called defendant's wife vile names, which insulting conduct as to said names was made known to defendant as soon as he reached the place where his wife was, he having, immediately upon seeing said Schmidt slap his wife, gone hastily towards where his wife and said Schmidt were, and on his approach said Schmidt went into his own house, followed by his own wife, and upon defendant getting to where his, defendant's, wife was, she stated to him that said Schmidt, in addition to striking her, had called her 'a bitch' and 'a whore,' and had used other insulting language to and towards her, and that defendant was greatly outraged by said matters, and immediately went into his own house, which was within a few feet of where said assault occurred, and got his shotgun and went upon the premises of the said Schmidt, and called to him from the gate to come out of the house that he wanted to see him, and hearing no response went through the gate to the immediate yard surrounding the house of said Schmidt and towards the door of the said house, and had passed beyond a certain window going towards said door when he heard the voice of said Schmidt in said house at about said window, and turning and stepping back to a point opposite said window saw said Schmidt and called to him to come out of the house, that he wanted to see him, and said

Schmidt then made a demonstration to reach for a pistol, according to the testimony of defendant, which defendant testified he saw lying on the table near said Schmidt, and that defendant called to him to stop, and said Schmidt not stopping defendant fired one barrel of his double-barreled shotgun, which was loaded with small shot, at said Schmidt, the other barrel being loaded but not discharged, and defendant stating that the reason he did not fire said other barrel, which there was nothing to prevent him from doing, was that he saw, after he had fired the first barrel, that said Schmidt did not appear to intend to make any further attempt to injure him, defendant, then, that the shooting into said house could not amount to a felony, and therefore could not constitute such an entry as would go to constitute the act of burglary under the law as defined in said articles 838 and 841 of the Penal Code, and that it was necessary to try cause No. 15548 first in order to ascertain the above facts.

As appellant insists, article 838 of the Penal Code provides that burglary is constituted by the entrance of a house by force, threats or fraud with intent to commit a felony or the crime of theft. Article 839 of the Penal Code provides that he is also guilty of burglary who, with intent to commit a felony or theft by breaking, enters the house in the daytime. Article 840 of the Penal Code provides that it is not necessary that there should be an actual breaking to constitute the offense of burglary, except when the entry is made in the daytime. Article 841 provides the entry is not confined to the entrance of the whole body. It may consist of the entry of any part for the purpose of committing a felony, or it may be constituted by the discharge of firearms or other deadly missiles into the house with the intent to injure the person therein. Appellant contends that article 841 does not define a separate and distinct offense, but is explanatory of articles 839 and 840, and that there can not be burglary unless the intent is to commit a felony or the crime of theft, and, therefore, to discharge firearms into the house with intent to injure, an intent to injure not necessarily being a felony, that it would not be burglary unless there was a felonious purpose. In the case of Garner v. State, 31 Texas Crim. Rep., 22, we used this language: "Article 707 of our Penal Code (the old number which corresponds with article 841 of the present Code) defining what constitutes an entry in burglary, declares that 'it may be constituted by the discharge of firearms or other deadly missile into the house, with intent to injure any person therein.' Under this provision of the statute, to discharge firearms into a house with intent to injure any person therein is per se burglary, and constitutes all the force and entry that is necessary and essential to that crime. Our conclusion is, that the indictment in this case is not defective, for the reason stated by appellant's counsel

in his motion to quash; and we are further of opinion, that it suffi-
ciently charges a burglary by the discharge of firearms into a
house with intent to injure the persons therein. The indictment is
in substantially the same language as that used for a similar offense
in the case of Searcy v. State, 1 Texas Crim. App., 440, and which
indictment was pronounced to be good by the opinion of the court
in that case." We hold that article 841 is but an addition to articles
838 and 839, and that the true construction to be placed upon it
would be to make article 838 read as follows: The offense of bur-
glary is constituted by entering a house by force, threats or fraud
at night, or in a like manner entering a house and remaining con-
cealed therein with the intent in either case to commit a felony or
the crime of theft, or it may be constituted by the discharge of
firearms or other deadly missile into a house with intent to injure
the person therein. The Code itself provides that same must be
construed as one harmonious whole and each provision thereof given
validity and force without regard to the distinction that existed
at common law between the construction of civil and criminal stat-
utes. In the light of this rule of construction, both statutory and
common law, we hold that it would be a strained construction to
hold that the intent to injure must be a felony since this would
destroy the liberal wording and evident intent of the law. Article
838 says if one enters a house with intent to commit a felony he
is guilty, and then article 841, which makes it a burglary to shoot
firearms into a building with intent to injure an occupant of the
building, clearly was designed and intended to set up the offense
or mode and method of committing the crime of burglary. In
the case of Hammond v. State, 29 Texas Crim. App., 445, a con-
verse rule appears to have been laid down to that here announced,
but a careful reading of said last cited decision would show that it
was only articles 838 and 839 there under consideration and not
article 841, and any expressions in said opinion to the contrary
clearly appear to be dicta. So, reverting to the action of the dis-
trict attorney, complained of in the above bill of exceptions, we
say the court did not err in permitting the dismissal of the assault
with intent to murder case, since the State can carve, in drawing
its indictments, any offense defined by the statute out of any given
state of facts, dismiss either one of the indictments and try for
the other. Certainly, if it is per se burglary to shoot into a house
with intent to injure any person therein, it would become utterly
immaterial whether appellant was guilty of murder or assault. In
other words, being per se burglary to shoot into a house with intent
to injure an occupant thereof, it becomes immaterial whether the
party had a felonious purpose or not, and if appellant being apprised
of the insults and indignities offered his wife, shot at the prosecuting
witness upon first meeting and the same should only be aggravated

or simple assault, waiving the burglary feature, still these facts would become immaterial if he intended to injure the party in the house. The object and purpose of article 841 of the Penal Code was to protect the sanctity of the home and to punish the ruthless shooting into same by anyone where the purpose of so doing was to injure an occupant of said home or house. It follows, therefore, the court did not err, from any standpoint, in permitting the district attorney to dismiss the indictment above discussed.

Bill of exceptions No. 2 complains of the same matter, in substance, discussed in bill No. 1.

Bill of exceptions No. 3 complains that the regular panel of jurors for the week having been tested on their voir dire as to their qualifications, and only twenty-two having qualified, the court ordered twenty-five talesmen to be brought in to be tested on their voir dire out of which to complete the list of twenty-four names, from which list the parties should select a jury, and thirteen of said talesmen jurors having qualified, defendant then requested the court to have the names of said twenty-two jurors of the regular panel and all of said talesmen who had qualified placed in the box and shaken up and drawn from the box in the regular way until a panel of twenty-four was completed, which request the court refused to grant as to the said twenty-two regular jurors, but did grant said request insofar as securing the names of two additional jurors from said list of talesmen was concerned. There was no error in the ruling of the court.

Bill of exceptions No. 6 complains that defendant having called Frank Frost, who was duly sworn as a witness in his behalf, and who testified that he knew the complaining witness, Charles Schmidt, and his wife, and that he, witness, on a certain occasion when said Schmidt had taken up the horse of the witness went to the place of residence of the said Schmidt, and that said Schmidt, without provocation or excuse, spoke in a loud and angry manner to him, but spoke in Mexican and that he could not understand that language, but the conduct of the said Schmidt was violent, which testimony, after it was given, was, upon motion of the State, stricken out, over the objection of defendant made at the time; and appellant further offered to prove by said witness the above said facts to which he had testified, and further, that the wife of said Schmidt at said time and in the same connection, attempted to strike the witness, which was also without provocation or excuse, and which testimony the witness would have given had he been permitted; and which testimony was then and there stated to be offered in contradiction of the statement of the said Schmidt that he was not a man that ever got mad, as claimed by defendant in this case, and that he never used violent or profane or indecent language or conduct to or towards anyone, and that his wife was never violent in

language or conduct, and as an impeachment of said Schmidt and his wife as witnesses in this case, and as shedding light upon the probable conduct of said Schmidt and his said wife at the time said Schmidt assaulted the wife of defendant, as claimed by defendant and his wife, and his, defendant's witness, Willie Schubert. We do not think this testimony was admissible. Previous altercations with other and different parties could not throw any light on this question. If appellant had laid a predicate to impeach said prosecuting witness Schmidt, asking said Schmidt if he had not had a difficulty with the witness, then said witness could have been introduced to impeach said Schmidt on said question, but isolated instances of temper or quarrels is not a compliance with the rules of evidence to prove reputation.

Bill of exceptions No. 7 shows the defense introduced three witnesses, each of whom testified to the general bad reputation of the alleged injured party, Charles Schmidt, for peace and quiet in the community in which he resides, and defendant then offered to further prove by each and all of said witnesses that they were acquainted with said Schmidt's habits and disposition and his general reputation as to using violent, profane and indecent language and conduct to and towards others, and specially when he was angered at anyone, and it was at the time stated to the court to be offered in connection with the general bad reputation of said Schmidt for peace and quiet, as bearing on the general issue of the conduct of the said Schmidt to the wife of defendant at the time of the alleged assault of said Schmidt on the wife of defendant, and the alleged use by said Schmidt to the wife of defendant of vile and insulting language, just a few moments before the shooting occurred, and as bearing on the probable conduct of said Schmidt at the time of the alleged shooting of said Schmidt by defendant. Under the facts of this case we do not think this testimony is material, since, as stated above, the testimony could only go to corroborate the fact that the prosecuting witness had assaulted appellant's wife, and it being burglary per se to shoot into a house to injure the prosecuting witness, then the testimony becomes immaterial, since it could only serve to corroborate appellant's theory that the assault was an aggravated assault and not an assault with intent to murder; and under the statute above discussed, it being immaterial whether it was an assault to murder or aggravated assault, then it follows that the testimony was immaterial.

Bill of exceptions No. 8 complains practically of the same error of the court in refusing to admit reputation of the prosecuting witness as discussed in the above bill.

Bill of exceptions No. 11 shows that W. G. Love, district attorney, being on the stand as a witness in behalf of the State, in the State's rebutting testimony, was permitted to state and testify

to the jury that his reasons for dismissing the indictments in cause No. 15548 and cause No. 15549, the first alleging an assault by defendant with a gun upon the alleged injured party, Charles Schmidt, and the second, charging such an assault with said same intent upon Mrs. Charles Schmidt, and both of which were based on the shooting which is the basis of this prosecution, was, because in his judgment, the same facts were the basis of said prosecution, that are the basis of this prosecution, and that the State could not carve "two convictions" out of the same facts, and that for that reason he nolle prossed said indictments and elected to try defendant upon the indictment in this cause, to which testimony when offered, and before it was given, defendant objected on the ground that same was the opinion of said witness, and was admitting said opinion of said witness before the jury as evidence, that in his judgment and opinion the defendant was guilty in this case, and that when the jury had convicted defendant in this case, according to said opinion of said witness that the State could not then carve "another conviction" out of the same facts, and that the same was not the statement of any facts, and that the nolle prosequi entered in said causes stated the reasons for their being entered, and that the said opinion of said witness was irrelevant, immaterial and incompetent as evidence to prove any fact or issue in this case. The court overruled the objections and witness was permitted to testify as above detailed. This bill is allowed with the following qualification: "The indictment in causes Nos. 15548 and 15549 referred to, together with the motions of the district attorney, to nol-prosse the same had been admitted in evidence on behalf of the defendant over the objection of the State, and the testimony above objected to was admitted on behalf of the State to explain to the jury why said cases had been nolle prossed by the district attorney." Certainly, in the light of the court's explanation, if error at all, the testimony of the district attorney was harmless. The defense had insisted upon introducing the indictments charging appellant with assault with intent to murder upon prosecuting witness Schmidt and his wife, and the reasons of the district attorney for nolle-prossing same and it could do no harm to amplify the reasons for nolle-prossing the indictments. . None of the testimony, however, ought to have gone before the jury. It is a matter addressed to the discretion of the court and with which the jury had nothing on earth to do, but certainly. appellant can not complain, after the indictments were introduced and the reasons for nolle-prossing also introduced, that the district attorney explained to the jury.

Bill of exceptions No. 12 shows that the State's witness, Jack Hagerman, being on the stand for the State in its rebutting testi-

mony, and being on cross-examination, the said witness having testified on the day of the occurrence alleged in the indictment in this cause, he went to the place known as the "Jones' place," which was in sight of what occurred between the State's witness, Charles Schmidt, and defendant's wife, which immediately preceded the shooting, and that he saw defendant's wife at her buggy and apparently unhitching her horse, and saw her grab her buggy whip out of her buggy and go to the fence and put her foot on the first board of the fence as if she was going to get over with the whip in her hand, but that he would not say that she was unhitching the horse, or what occurred prior to that time, and the State's witness, Charles Schmidt, having testified that defendant's wife slapped at him three times across the fence and that he jumped back each time, and that she then ran to her buggy and grabbed the whip and came back to the fence with it, and defendant's wife having testified that said Schmidt slapped her at the fence and then started as if to get over the fence, and that she then went to the buggy and got her whip with the intention of defending herself as best she could against said Schmidt should he cross the fence to continue his assault on her; and the witness further testified that he did not see defendant's witness, Willie Schubert, a small boy about eight years old, who had testified that he was present and had gone to where Mrs. Railey was, to take her some meat that had been left by a butcher at his mother's for Mrs. Railey in the absence of Mrs. Railey, and that he heard said Schmidt call Mrs. Railey "a bitch" and "a whore" and some other ugly names, and saw him slap her, and that he then left and went to his home, his mother living upstairs over said "Jones' place," and defendant then asked witness Hagerman the following question: "If that little boy says he was out there, you wouldn't undertake to dispute that he was not, would you?" and to which question the witness would have answered had he been permitted to do so, that if the little boy said he was there he would not dispute it, and which was at the time stated by defendant to be offered for the purpose of testing the extent to which the witness would assert that the little boy was not present at the time of the alleged assault upon, and insulting conduct towards, defendant's wife by the State's witness, Charles Schmidt. This testimony was utterly inadmissible; it called for an opinion of the witness. The court approves the bill, however, by stating that the State also objected to the form of the question as being improper, and the court only sustained the objections as to the form of the question, and stated to counsel for defendant at the time that he might ask the witness any question or questions which would elicit the fact of whether or not said boy, Willie Schubert, was present at said time and place, or whether the witness saw said boy, and thereafter counsel for defendant did propound

proper questions to said witness which elicited the following testimony from him: "I will not undertake to say that he was not there (referring to said boy, Willie Schubert); I will not do that now; I say that I did not see him there."

Bill of exceptions No. 13 complains the court erred in refusing to sustain a motion of appellant to require the State to elect which count in the' indictment would be relied upon for a conviction. The court merely submitted the first count in the indictment. This cured surely any error in the ruling of the court.

Bill of exceptions No. 14 complains that the State argued to the jury as follows: The defendant interposes technical objections and in that way prevents the State from proving certain facts. This bill is allowed with this explanation: "After the objection by defendant to the language used as set out above, the court instructed the jury not to consider said argument, and at the conclusion of the argument, at defendant's request, gave to the jury defendant's special instruction No. 1, again instructing them that they should not consider said language." The explanation cured any possible error in the argument. Bill No. 15 complains in substance to same facts as those stated in bill No. 14.

Bill of exceptions No. 16 complains in substance of the following statement in the closing argument by the State: "Let us now get rid of slop that is always injected in a criminal trial by the defendant." The explanation to this bill says that after the objection of defendant to the language used, as above set out, the court instructed the jury not to consider said argument, and at the conclusion of the argument, and at defendant's request, gave to the jury defendant's special instruction No. 3, again instructing them that they should not consider said language. This bill and bill No. 17 complain practically of the same matter. In the light of the explanation of the court none of this argument was prejudicial to appellant.

Bill of exceptions No. 19 shows that defense counsel in course of his argument, after stating that children are usually truthful, stated that the Savior had said, "Suffer little children come unto me, for of such are the kingdom of Heaven." In reply to this, State's counsel used this language: "The Gentleman who uttered the expression, 'suffer little children come unto me, for of such is the kingdom of Heaven,' lived nearly two thousand years ago, and did not know of the juvenile laws and courts of Texas, and of the small boys who have been juveniled under that law." Waiving the sacrilege of the suggestion of the State's counsel, we do not think there was any error in the retort made upon appellant's argument.

Bill of exceptions No. 21 complains of the misconduct of the jury who, after they retired to consider their verdict, received other

evidence in the absence of defendant, of a material character, other than that adduced upon the trial of this cause, in this, to wit: that one, or more, of said jurors whose name or names defendant is unable to now give, drew a diagram of his or their own which was substituted for the two diagrams introduced in evidence of the interior of the room in which the said Schmidt was at the time the shot was fired, one of said substituted diagrams having been drawn by the said Schmidt, and the other by the State's witness, J. A. Voss. We have carefully reviewed the matter complained of in this bill and think that the mere fact that one of the jurors had been on the building when it was constructed and had some personal knowledge of its location, did not and could not have injured appellant for him to state the knowledge that he had of the location of the building, in the light of this record, since appellant says when he reached the window that the injured party attempted to shoot him with a pistol or gun, and a pistol is frequently called a gun, and that he fired for self-preservation. The defendant's case is that he fired on account of the indignities offered appellant's wife. So we see nothing in the plat suggested by the jury that could injure in the remotest appellant's rights. Of course, the question is well settled that additional evidence that injuriously affects or could injuriously affect the rights of a defendant is a proper ground to reverse a case. One or more maps were introduced. The bill presenting this matter is too long and voluminous to copy in this opinion. Suffice it to say that there was no error prejudicial to appellant. Furthermore, the bill presenting the matter does not appear to be signed by the judge.

The charge of the court in all respects properly presents the law of this case, and presents the doctrine of reasonable appearances of danger as well as actual danger from the defendant's standpoint, authorizing the jury to resolve each reasonable doubt in behalf of the appellant. We have carefully reviewed seriatim all of appellant's contentions, and do not believe there is any error in this record authorizing a reversal of the judgment, and same is in all things affirmed.

*Affirmed.*

[Rehearing denied December 22, 1909.—Reporter.]

### ON PETITION FOR WRIT OF ERROR TO U. S. SUPREME COURT.

#### January 13, 1910.

DAVIDSON, PRESIDING JUDGE.—Being of the opinion that there is no Federal question in this case as presented in appellant's petition for a writ of error, the prayer of said petition is denied and the application for said writ is refused.

January 24, 1910.

DAVIDSON, PRESIDING JUDGE (dissenting).—I am of opinion motion for rehearing should be granted, and, therefore, respectfully enter my dissent to the affirmance of the judgment.

The attorneys in the case for appellant, Messrs. Fisher & Allison, Brockman, Kahn & Williams, and T. H. McGregor, have forcefully, clearly and ably presented the reasons why the affirmance should be set aside. After reviewing their argument I think their reasoning sound. Their conclusions are unanswerable, and present the questions involved so concisely, and in such logical manner, that it would be unnecessary even were I able to do so to add anything to what is contained in said brief. I, therefore, adopt their argument as my dissenting opinion in the case, as follows:

"To arrive at a proper understanding and construction of article 841, it becomes necessary to examine and consider the law as it was before the enactment of such article and its companion articles to the Code relating to burglary; also different Acts of the Legislature relating to the adoption of the Code, the expressed opinions of the different codifiers, as well as the construction placed upon the different articles of the Code by lawyers 'learned in the law' and the opinion of judges who, as either lawyers or judges, were contemporaneous with the law before the adoption of the Code, at the time of the adoption and subsequent thereto. All of this we wish to consider, not only for the purpose of arriving at the legislative intent, but how such intent was gathered and construed by those whose duty it was, by professional or other duties, to arrive at, construe and determine such intent.

"The first law of burglary (in Texas) was that of December 21, 1836, and is found in Hartley's Digest, article 105, page 115, as follows: 'Every person who shall break and enter into any dwelling-house, or store, by night, and feloniously take therefrom any goods, chattels, money, or other articles of value, shall be deemed guilty of burglary, and on conviction thereof shall suffer death.' Thus the law read until January 1, 1849, when the Act of March 20, 1848, became the law, as follows: 'That if any person shall, in the night-time, break and enter any dwelling-house, with intent to commit any crime, the punishment whereof may be death, or confinement to hard labour in the penitentiary, for a term of not less than five years, nor more than fifteen years.'

'That if any person, with intent to commit any crime, the punishment whereof may be confinement to hard labour in the penitentiary, or to commit larceny, shall in the night-time break and enter any office, shop, store, or warehouse, or any vessel lying within the body of any county, he shall be punished by confinement to hard labour in the penitentiary, for a term of not less than one year, nor more than ten years.'

'If any person shall, in the night-time break and enter, or in the day-

time break and enter any dwelling-house, or any outhouse adjoining thereto, any office, shop, store, warehouse, mill, or cottongin, any meeting-house, courthouse, townhouse, college, academy, schoolhouse, or other building erected for public use, or any vessel lying within the body of any county, and *shall therein* commit larceny, he shall be punished by confinement to hard labour in the penitentiary for a term not less than one year, nor more than five years.' Hartley's Digest, p. 116, articles 108, 109, 110. This continued as the law until the 28th of August, 1856, when the 'Penal Code' went into effect. A great deal of confusion was found to exist prior thereto. Therefore, to systematize the laws of the State the Legislature on the 11th of February, 1854, by enactment, provided for a codification of the laws of this State, and Messrs. Harris, Hartley and Willie, all able lawyers, were appointed as codifiers. The Code of 1856 is the result of these labors. However, many amendments were made by the Legislature before the adoption thereof. Chapter 6, Title 20, pp. 142, 143 and 144 of the Penal Code were adopted substantially as reported by these codifiers, but article 725a was added by the Legislature as an amendment, as will appear from the enrolled bill filed with the Secretary of State. The Legislature evidently was not satisfied with the definition of 'entry' as defined in article 726, the same not being to its mind sufficiently full and complete. The offense of burglary, however, was fully defined by article 724 and 725. Under these two articles, as defined, no entry, however wrongful, unless coupled with an intent to commit a felony could be burglary. Shortly after the adoption of this Code, the Legislature, by the Act of the 15th of February, 1858, again provided for the arrangement, classification and printing of the laws, and required not only the proper codification, but further required, 'Besides the laws in force, it shall contain the appropriate titles in smaller type, and the repealed laws of the Republic and State of Texas by, through, or under which, rights have accrued; also, the colonization laws of Mexico and Coahuila and Texas, which were in force before the Declaration of Independence by Texas. Marginal notes indicating the *subject of each section,* and containing references to laws upon the same subject, if there be such, and at the foot of each page, referring to the decisions of the Supreme Court in which there have been judicial interpretation of the Act or section to which such notes are attached.' Messrs. Oldham and White, two lawyers who stood high in the profession, were selected to do the work, which, upon being completed, became the standard of authority and so remained (of course, subject to such changes as were subsequently made by the Legislature) up to 1879, when the laws were recodified. No changes were made in the definition of burglary from 1856 to 1876, at which time the words 'or the crime of theft' were added by Act of August 21, 1876. Prior to that time nothing short of a felonious entry would constitute burglary, but as the Legislature at that time had repealed the law making

theft from a house a felony, it became necessary also to incorporate 'intent to commit the crime of theft' into and as a part of the definition of the offense. This brings us now to the question: 'Is the discharge of firearms into a dwelling-house with intent to injure any person therein, in the absence of a felonious intent, *per se* burglary under article 841, when construed in connection with articles 838, 839,' etc.? If such was the legislative intent in the enactment of article 841, then the opinion of the majority of this court is right in sustaining the indictment upon which the conviction was predicated. If on the other hand article 841 only attempts to define modes of entry and not the offense of burglary itself, then this case ought to be reversed and dismissed.

"Strange as it may seem, it does not appear from the judicial records of the higher courts of this State, so far as we have observed, that the law of burglary was violated from 1836 to 1867, when for the first time a case involving this offense made its appearance in the Supreme Court under the style of Portwood v. State, 29 Texas, 47, which was an appeal by the State from a judgment of the lower court quashing the indictment. The court in that case in construing the law says: 'It is an essential ingredient of the offense herein intended to be charged that the house should be entered for the purpose of committing a felony. *This is averred in the words of the statute.*' (Italics ours.) While we have no judicial interpretation by our courts from 1836 up to 1867, yet we have the opinion of eminent lawyers during such time which carry as much weight as if expressed under the sanction of judicial procedure, such men as Harris, Willie, Oldham, White, Paschal, Wheeler, Bell and Pease, all, or nearly all, of whom expressed themselves as to the legislative intent and as to the proper construction to be given to the different articles of the Penal Code. It must be borne in mind that while Texas was not a 'common law State,' yet most of her people who came here from 1830, were from States where the common law prevailed. They were not accustomed to and knew nothing of the civil law prevailing when Texas declared her independence, hence, most of the statutes describing offenses from 1836 on were made after the model of the common law. By an examination and comparison of the different articles and principles embraced in the law of burglary, as found on pp. 142, 143 and 144 of the Penal Code of 1856, it will be seen to be a rehash of the common law. To illustrate: The offense of burglary at common law is defined as follows: 'A breaking and entering the mansion-house of another in the night, with intent to commit some felony within same, whether such felonious intent be executed or not.' Russell on Crimes, vol. 2, p. 1, International Edition, 1896. The entry must be to commit a felony. Nothing short of that will do. At common law there can be no such thing as burglary without an entry, nor entry without an intent to commit a felony. Russell, in

speaking of entry under his first chapter, second section, vol. 2, above referred to, says: 'With respect to the entering necessary to constitute burglary: it is agreed that any, the least, entry either with the whole or any part of the body, hand, or foot, or with any instrument *or weapon,* introduced for the purpose of committing a felony, will be sufficient.' Page 10. And again, 'Though it is admitted that a person putting a pistol in at a window with intent to kill, thereby makes a sufficient *entry* to constitute a burglary, yet it has been questioned whether if he should shoot without the window, and the bullet come in, the entry would be sufficient. It is, however, elsewhere laid down that to discharge a loaded gun into a house is a *sufficient entry,'* p. 11. Now, here we find in the first instance a definition of burglary, and wherever he speaks of the entry as in the second instance, it is coupled with a felonious intent. The entry is the mode of committing the burglary. It is not the burglary itself. That together with the intent constitutes the burglary. The absence of either destroys the offense. We call the attention of the court to Russell's title on burglary for the purpose of showing that the lawyers who codified the law of 1856, and the Legislature which adopted that Code, being common law lawyers and men from common law States, did so with a view to make it conform as nearly as possible— not only to the common law offense, but to the construction given by the courts when called upon to construe any of those offenses. Therefore, when they inserted article 726 in the Code and adopted it, which is now article 841, they had the common law construction in view and intended such article, not as a definition of burglary, but as one of the means of entering for the purpose of committing burglary. Now, let us look to Oldham & White's Digest, which was compiled in obedience to the Act of the 15th of February, 1858, as before stated, and which was approved by both Judges Wheeler and Bell, judges of the Supreme Court, in compliance with such acts that two of the judges should approve the work. We must bear in mind that the Act of February, 1858, required Messrs. Oldham and White to place 'marginal notes *indicating the subject of each section* and containing references to laws upon the same subject.' This they did, which became by legislative enactment a part of the law demonstrating the legislative intent as to each article. These marginal notes indicating the subject of each section were afterwards carried into and became a part of Paschal's Digest, showing the construction that he, as an able and learned lawyer, placed upon the legislative intent. Not only that, but since, they have been carried forward into the Codes of 1879 and 1895. These facts are referred to for the purpose of showing the construction placed upon these different articles, not only by learned lawyers, whose duty it was to codify the laws, but by the different Legislatures in legislating upon the subjects embraced therein.

Now, when we turn to articles 724 and 725, as found in Oldham and White, we find the marginal notes showing ·that these two articles define the offense of burglary. When we turn to articles 725a and 726, we find the marginal notes saying, 'These articles define the term 'entry.' Then are we not justified in contending that articles 725a and .726 do not, within themselves, attempt to define the complete offense of burglary, but only one of its constituents? When we turn to the Code of 1879 we find the same construction given to articles 704, 705, 706 and 707, which in that Code took the place of articles 724, 725, 725a and 726 of Oldham & White. Now, the codifiers of that Code were five of the ablest lawyers who ever adorned the bench or bar of Texas. They were J. W. Ferris, B. H. Bassett, S. A. Willson, George Clark and C. S. West. They were known not only for their great learning, but for system and painstaking care. They adopted the same construction, as said before, that was placed upon the legislative intent by such men as Paschal, Oldham and others.

"As before stated, these lawyers,· being from common law States, and they knowing and understanding that burglary at common law was a felony and that no statute prior to that of 1876 dispensed with a felonious intent, and only· then except in cases of intent to commit theft, and the class of men forming the different Legislatures, being also from common law States, it is hardly presumable that they would make so radical a departure from the common law as to make one of the elements of the offense, namely, entry, burglary, per se, thereby changing the whole scope and character of the offense as it existed at common law. We, therefore, respectfully submit that taking the interpretation of those most learned in the profession, and who were in the main contemporaneous with the different enactments above referred to, it is safe to give to this law and the legislative intent the interpretation given to it by such men.

"Now, let us examine the interpretation given by courts. As was said before, the first case is that of Portwood. A decision by Judge Donley, who came to Texas at an early day, ranked high as a lawyer, and was frequently a member of the Legislature prior to 1860. He being contemporaneous with the enactment of those laws, his opinion carries with it much weight. We respectfully refer this court to that case wherein the judgment was affirmed, sustaining the judgment of the lower court quashing the indictment. The next case is that of the State v. Robinson, 32 Texas, 160, opinion by Judge Lindsey, wherein the indictment was sustained (the indictment alleging that John Robinson with force and arms did feloniously break and enter the dwelling-house of Frank Robinson), who said in the opinion, p. 163, 'In all cases the entry must be with a felonious intent, which felonious intent is manifested .after the entry by the actual attempt, or commission of some specific felony, and which ought to be alleged,

according to the facts of each case.' The next case is that of the State v. Robert Williams, 41 Texas, 98, an appeal by the State from judgment of the lower court quashing the indictment, which judgment was affirmed, Judge Devine rendering the opinion, wherein this language is used: 'The mere entry into a house by force in the nighttime, however great the trespass, and however great the risk of personal injury or danger to the intruder may be, is nevertheless nothing more than a misdemeanor. To constitute the act (burglary) there must be some evidence of a felony being committed, or some facts evidencing an intent to commit a felony, which act or intention, being coupled with the unlawful entrance, constitute the crime of burglary. No such attempt to commit a felony is charged in this indictment.' Judge Devine came to Texas at an early day, was one of the great lawyers of the State, thoroughly familiar with our system, understood the common law, as well as our legislative enactments, and he indulged in no idle remark when he said 'there must be some evidence of a felony being committed, or some fact evidencing intent to commit a felony coupled with the entry.' The next case is that of Wilburn v. State, 41 Texas, 237, opinion by Judge Reeves, also an old Texan, who was thoroughly familiar with our laws, and who says in that opinion, to constitute burglary, 'there must be a breaking and entry, a felonious intent; and it is not material whether the intention to commit a felony is actually carried into effect, or only demonstrated by the attempt or some overt act, to be decided by the jury from the facts in evidence.' These cases so far referred to were all prior to the amendment of 1876. In the case of Searcy v. State, 1 Texas Crim. App., 440, Judge Ector rendering the opinion of the court says: 'We think the indictment is a good one for burglary under article 2362, Paschal's Digest' (art. 841). By an examination of the indictment in that case it will be seen that Steve Searcy did then and there wilfully, unlawfully, feloniously and burglariously discharge certain firearms, namely, a pistol, into the dwelling-house of Nelson Paulingman, with the wilful and felonious intent then and there to commit a felony in said house, namely, he, the said Searcy, did then and there discharge said pistol into said house, as aforesaid, with the wilful and felonious intent on the part of him, the said Steve Searcy, of his malice aforethought, then and there to murder,' etc. When we turn to our Penal Code, sec. 1436, p. 560, as annotated by Judge White, who was for years Presiding Judge of this court, we find the form of indictment given for burglary when the entry was had by the discharge of firearms. In that form it will be seen that facts must be alleged going to show the intention to commit a felony. It is unnecessary to refer to other authorities. Suffice it to say that at common law to constitute burglary there must be a felonious entry and under our definition of burglary from 1836 up to the present time to constitute burglary, the entry

must be shown to be either felonious or to commit theft. Such being the interpretation put upon it by all of our courts heretofore, and by those learned in the profession, it evidently being intended that our Act as to burglary should assimilate itself as near as possible to that of the common law, it should be made clearly to appear to this court that the only construction that this court can give to it, is the one that it has adopted in this case, before it will be authorized to overthrow the construction heretofore placed upon the law of burglary.

"The construction that this court has given to article 726 (841) destroys absolutely the right of self-defense. Therefore, if such be the purport of this article, and such was the intention of the Legislature, then such article should be held to be nugatory because no law making power in Texas, or anywhere else can take away from a citizen the right to defend himself from an unlawful attack, or from what appears to him to be an unlawful attack. Let us see what is the logical result of the holding of this court. A is walking along the street interfering with no one. B, an enemy of his, raises the window of his house and begins to fire upon A. If A returns that fire in self-defense, under this definition, he is guilty of burglary. If he does not return the fire, he is in danger of the loss of his life or serious injury. If it be the purpose of this court to so hold, then it is unsupported by either law, logic, or reason. Why? He fires into B's house with intent to injure B. The discharge of the firearm into the house with the intent to injure is, under this definition, per se burglary, and the fact that he fired in self-defense would be no defense for burglary under this decision, because the principal issue in this case, as made by the evidence, is that when the defendant fired into Schmidt's house he fired in defense of himself, because he thought that his life was in danger. If defendant had been charged with assault with intent to murder, he would have had a complete defense; by being charged with burglary, though he acted in self-defense and upon the same state of facts, he is guilty of burglary without any defensive rights whatever, and the evidence which would acquit him of assault with intent to murder, is not admissible in a charge of burglary. This court ought to hesitate a long time before making such a radical departure as it is doing in this case."

A rehearing ought to be granted herein, the former opinion set aside, and the judgment of the court below reversed and this prosecution dismissed.

I wish further to state that Messrs. Brockman, Kahn & Williams filed very able and exhaustive briefs and arguments in addition to that set out in my dissent covering this and other questions, as did Hon. T. H. McGregor, which have been of great service to me in reviewing the question there discussed, and in arriving at the conclusion reached. Owing to the great length of these briefs and arguments,

they have not been embodied in the dissenting opinion. They will, however, be perpetuated in the official report of the case in such form and manner as is authorized by law in regard to reporting briefs in cases.

For reasons above stated, I enter my dissent.